[L. A. No. 27090. In Bank. May 21, 1963.]

LUTHER DANIELS et al., Plaintiffs and Appellants, v. SANITARIUM ASSOCIATION, INC., et al., Defendants and Respondents.

Levy, Russell, DeRoy & Geffner, Levy, DeRoy, Geffner, Kosdin & Glow and Leo Geffner for Plaintiffs and Appellants.

Paul, Hastings, Janofsky & Walker, Leonard S. Janofsky, Oliver F. Green, Jr., and Dennis H. Vaughn for Defendants and Respondents.

TOBRINER, J.—Plaintiffs confront us with the anachronistic situation that an unincorporated labor union cannot, under the decisions at common law, file suit in its own name. These older cases, of course, reflect an age when a labor union occupied a doubtful legal status. ▉ For the reasons we shall later specify in more detail we believe that the role of the union in the present economy, and the statutory sanction of the union under certain circumstances as a bargaining representative of employees, requires a procedural accommodation to the union's ability to litigate. Moreover, since we have recognized that the union may be substantively liable in tort as an entity, we do not see why it should not be able to sue as an entity. Upon a parity of reasoning we have likewise concluded that the union may be defamed as an entity.

Luther Daniels brought this action for libel "in a representative capacity for and on behalf of Service and Maintenance Employees Union Local 399, Building Service International Union, AFL-CIO." Daniels is the vice-president of this local, which is an unincorporated association representing approximately 7,000 members in the Los Angeles County area.

The complaint alleged the following essential facts. Local 399 represents employees of hospitals and sanitariums and has negotiated collective bargaining agreements on their behalf. By reason of its representation and the agreements it has secured, the union has built up an excellent reputation in the general community.

About September 23, 1960, defendants printed and published a letter which was circulated to approximately 50 sanitariums, hospitals and nursing homes in California. This document exposed the union, its officers, members and representatives to public hatred, ridicule, and contempt, and greatly injured them in their reputation, business and credit in the community. As a result, Daniels, on behalf of the union, filed the present suit, seeking $300,000 in general damages and $200,000 in exemplary damages.

Defendants demurred to the complaint; the court sustained

the demurrer, allowing plaintiffs 15 days to amend. The minute order contained the following notation: "An unincorporated association cannot sue; and insofar as this is a suit on behalf of the association, an unincorporated association does not have a cause of action for libel." Plaintiffs refused to amend; the court entered a judgment of dismissal.

In support of the judgment of dismissal defendants rely on those cases which conclude that an unincorporated labor union, as an unincorporated association, cannot, in the absence of a specific statutory provision, qualify as a party plaintiff.[1] The basic reason for this court-created rule "was that the association was not, in the eyes of the law, a legal unit or entity, and had no legal capacity to become a party to an action." (*Jardine* v. *Superior Court* (1931) 213 Cal. 301 at p. 307 [2 P.2d 756, 79 A.L.R. 291].)[2]

██ The trade union has grown from the early loose craft union into an institution comparable to a corporation or

---

[1] Historically, the courts in dealing with unions have not entirely withheld amenability to suit and capacity to sue because of an absence of statutory authorization. While the federal courts followed the restrictive common law rule until 1922, the Supreme Court in that year, in *United Mine Workers* v. *Coronado Coal Co.* (1922) 259 U.S. 344 [42 S.Ct. 570, 66 L.Ed. 975, 27 A.L.R. 762], held that even though the state of the forum accorded no such amenability, the union could be sued in its own name in the federal court in a case involving a federal question. (See Fed. Rules Civ. Proc., 17(b).) Some state courts, without the authorization of statute, reached the same result. E.g., *Williams* v. *United Mine Workers of America* (1943) 294 Ky. 520 [172 S.W.2d 202, 149 A.L.R. 505]; *Varnado* v. *Whitney* (1933) 166 Miss. 663 [147 So. 479]. See 6 Am.Jur.2d, Associations and Clubs, § 52 (1963); Brunson, *Some Problems Presented by Unincorporated Associations in Civil Procedure* (1955) 7 S.C.L.Q. 394.

[2] In *Jardine* we were called upon to adjudicate the constitutionality of section 388, Code of Civil Procedure, as well as to determine whether the Los Angeles Stock Exchange transacted business so as to be amenable to suit under that section. In holding that the Exchange was so amenable we stated and described the general rule which section 388 had partially eliminated: "The difficulty was only one of procedure, and the objection was purely technical. The liabilities or rights of the members were in no way involved, and were not, in theory, impaired by the operation of the rule. They might have brought actions if they all joined as plaintiffs, and they might have been held to any liability imposed upon them by law, if sued and served individually. But where associations with large membership were involved, the operation of the rule frequently had inconvenient and unjust consequences, and various exceptions came to be recognized. Thus, it is generally held that failure to raise the question of capacity is a waiver of the objection. And in suits in equity, courts have taken jurisdiction over all of the association members, though not all were made parties to the action, on the theory of representation. Likewise, where statutory recognition of the association as an entity has been found, suits have been permitted without any specific statute on the right to sue. [Citations.]" (213 Cal. at pp. 307-308.)

public utility. Indeed this court has said that the union may no longer be regarded as a mere fraternal organization or social club. (*James* v. *Marinship Corp.* (1944) 25 Cal.2d 721 [155 P.2d 329, 160 A.L.R. 900].) The legal evolution of the status of the union has occurred both by statutory and decisional recognition of the metamorphosis in its composition and function.[3]

This court has recently recognized the contemporaneous social responsibility of these organizations and the resultant legal amenability. In the case of *Marshall* v. *International Longshoremen's & Warehousemen's Union, Local 6* (1962) 57 Cal.2d 781 [22 Cal.Rptr. 211, 371 P.2d 987], we rejected as to labor unions the longstanding general rule that a member of an unincorporated association could not recover against the association for personal injuries sustained as a result of the association's negligence. The old approach regarded all members of the union as principals and agents or partners; hence, the negligence of any member would be attributable to any other member suffering injury. After analyzing the emerging entity status of a labor union, we concluded that the old rule could no longer be applied to unions.[4] We also held that any judgment recovered from the union could be satisfied from the funds and property of the union alone. (See also *Inglis* v. *Operating Engineers Local Union No. 12* (1962) 58 Cal.2d 269 [23 Cal.Rptr. 403, 373 P.2d 467].)

Justice Dooling, writing for the unanimous court in *Marshall*, pointed out that when the concepts of partnership "are transferred bodily to other forms of voluntary associations such as fraternal organizations, clubs and labor unions, which act normally through elected officers and in which the individual members have little or no authority in the day-to-day operations of the association's affairs, reality is apt to be sacrificed to theoretical formalism. The courts, in recognition of this act, have from case to case gradually evolved new theories in approaching the problems of such associations, and there is now a respectable body of judicial decision, especially in the field of labor-union law, with which we are here

---

[3]For an extended discussion of the statutory and decisional recognition of the changed nature of the labor union see Forkosch, *The Legal Status And Suability Of Labor Organizations* (1954) 28 Temp.L.Q. 1.

[4]For a discussion of *Marshall* see *Developments in the Law—Judicial Control Of Actions Of Private Associations* (March 1963) 76 Harv.L.Rev. 983, 1092. An intimation of the relevance of *Marshall* to the instant case is found in Note (1962) 50 Cal.L.Rev. 909, 914.

directly concerned, which recognizes the existence of unincorporated labor unions as separate entities for a variety of purposes. . . .'' (57 Cal.2d at pp. 783-784.)

To elaborate this position Justice Dooling refers to a series of decisions in this state which treat a labor union as an entity: *Shafer* v. *Registered Pharmacists Union* (1940) 16 Cal. 2d 379, 387 [106 P.2d 403] (union shop contract of union); *Cason* v. *Glass Bottle Blowers Assn.* (1951) 37 Cal.2d 134, 147 [231 P.2d 6, 21 A.L.R.2d 1387] (mandamus proceeding against union to compel hearing of suspended member); *Mooney* v. *Bartenders Union Local No. 284* (1957) 48 Cal.2d 841, 843 [313 P.2d 857] (inspection by member of union's financial records); and *De Mille* v. *American Federation of Radio Artists* (1947) 31 Cal.2d 139 [187 P.2d 769, 175 A.L.R. 382] (refusal to pay union assessments). Justice Dooling concludes this point with a quotation from *Oil Workers International Union* v. *Superior Court* (1951) 103 Cal.App.2d 512 [230 P.2d 71], to the effect: " 'It is obvious that such organizations are no longer comparable to voluntary fraternal orders or partnerships; that they are *sui generis*, and approximate corporations in their methods of operation and powers. . . . To consider such organizations under present day conditions as mere social or fraternal orders or partnerships is to close one's eyes to the realities now existing.' " (Pp. 786-787.)

The reluctance of the courts to traverse the full route in procedural recognition of the changed nature of trade unions leads to obscurantism in the enforcement of union rights. The latent unfairness and patent difficulties find their reflection in the instant case.

In the absence of a remedy for the union as an entity, plaintiff Daniels sought to bring suit on behalf of the union in a representative capacity.[5] Defendants assert that such a representative suit is not available. The complaint, according to defendants, alleges a libel of the union *as an entity*.

---

[5]One author notes the fact that even those courts which have resorted to the representative suit as an escape from the inconvenience and unfairness of the common law rule have proceeded to treat the union as an entity for collection of damages. ''Although the courts often give lip service to the notion that the representative suit is but a shortened means of suing the represented defendants, most courts here, as in the case of suits against unions in their common name, recognize the union as an entity to the extent of permitting the plaintiff to reach union assets without a showing of liability, on agency principles, on the part of all members.'' (Grodin, Union Government And The Law (1961) at pp. 81-82.)

The complaint does not identify or name any ascertainable persons who were libeled, and therefore states no cause of action as to any of the numerous individual members of the union. Since the complaint alleges a libel of the union as an entity, rather than of the specific members, plaintiffs fail to meet the statutory requirement of numerous parties. (Code Civ. Proc., § 382.)

The union is thereby presented with a fleeting image of the entity. If it seeks to sue as an entity, it meets the legal response that it cannot do so because it is merely a collection of individuals. If, however, it seeks to bring a class action on behalf of its members, it is told that it cannot sue in that capacity because it has complained that the union suffered the libel and because the union therefore cannot be conceived to be simply an association of individuals. The resultant anomaly deprives the union of any effective procedure of litigation.

Defendants argue that any change with respect to the capacity of a union to sue lies within the exclusive province of the Legislature. In the absence of legislation, however, the courts have recognized the entity concept in order to reach a proper result as to other situations. One noted commentator advocating judicial recognition of the unincorporated association's capacity to sue, has described the willingness of courts either to endow entity status or pierce it when such result was desirable.[6]

The social and economic realities of the present-day organization of society has thus led this court and others to recog-

---

[6]Professor Sturges asks, ''[W]ould it be too great usurpation by the courts of the powers of the legislature? . . . If the courts will establish individual immunity to stockholders just as if they were a *de jure* corporation although the members have substantially failed to perform the conditions for 'incorporation'—this in the name of *de facto* corporations; if the courts will legislate the doctrine of no collateral attack applicable to many *ultra vires* transactions of corporations; if plaintiffs may sue in their association name, although unincorporated, when the defendant has contracted with them in that name, on the doctrine of 'corporation by estoppel,' estoppel to deny legal existence as a corporation, as obtains in many jurisdictions;—if these doctrines have been made up out of whole cloth and cut from this traditional bolt by our courts, and legislatures allow them to stand, for the welfare and convenience of ourselves, it is submitted that the courts have been a little 'fastidious,' in the light of the inconvenience caused by it and its corollary, in continuing to impose the general rule which we have under consideration.'' (Sturges, *Unincorporated Association As Parties To Actions* (1924) 33 Yale L.J. 383, at p. 399; see also Dodd, *Dogma and Practice in the Law of Associations* (1929) 42 Harv.L.Rev. 977.

nize the suability of unions.[7]  In so deciding as to tort liability in *Marshall* and *Inglis,* we did not insist upon a rigid preservation of legal formality which had been moulded for an age of a different social structure.  We must recognize that the society of today rests upon the foundation of group structures of all types, such as the corporation, the cooperative society, the public utility.  Such groups must, of course, operate successfully within the society; one of the prerequisites to that functioning is, generally, liability to suit and opportunity for suit.  To frustrate that viability by the imposition of outmoded concepts would be to impair the institutions as well as to impede the judicial process.

We would be particularly remiss if we withheld the legal process from the labor union either as to suability or the right to sue.  The union has not only become an important economic unit but has assumed the role of a public institution, since it has been charged by statute (Labor Management Relations Act [Taft-Hartley Act] as amended, 61 Stat. 136 (1947) 29 U.S.C. § 141 ff.) with the right and obligation of representation of the workers in an appropriate bargaining unit upon selection by the majority.  The judicial process which confers such power should surely exact liability of such an organization to suit; the process must, by the same token, grant the right to sue.

We do not believe the form in which the action is brought should be crucial.  Here Daniels sued ''in a representative capacity for and on behalf of'' the union.  Such suit by a designated representative, instead of suit by the organization itself, has been used in the past as a method for a member or official to sue on behalf of the class which comprises the membership of the organization.  But the union, as we have pointed out, may sue as an entity for the wrong

[7]Recent Wisconsin cases have found substantive liability and capacity to sue following a progression similar to that in this state.  In *Teubert* v. *Wisconsin Interscholastic Athletic Assn.* (1959) 8 Wis.2d 373 [99 N.W.2d 100], the Wisconsin Supreme Court determined that in spite of the fact that no statute directly provided for such suits, an unincorporated association could be sued as an entity on its contractual undertakings.  During the same term the Wisconsin court treated a union as an entity for purposes of substantive tort liability.  (*Fray* v. *Amalgamated Meat Cutters etc. Local Union No. 248* (1959) 9 Wis.2d 631 [101 N.W.2d 782].)  Subsequently, a union sought to recover for an alleged libel.  The defendants demurred asserting that the union, as an unincorporated association, lacked capacity to sue.  The circuit court denied the demurrer and concluded that the union had the capacity to sue as an entity in light of the *Teubert* and *Fray* decisions.  (*Foundry Workers* v. *Whitewater Mfg. Co.* (Wis.Cir.Ct. 1961) 47 L.R.R.M. 2636.)

done to itself; such an action is not a class action but a direct one by the union. Hence the better and simplest form of procedure would be the suit in the name of the union as such. Since the matter is procedural only, however, we have considered, and sustained, the instant complaint as one brought by the union as an entity.

██ We turn to the second question presented to us: May a union be defamed as an entity? This question has not been resolved in California. Although the case of *Noral* v. *Hearst Publications, Inc.* (1940) 40 Cal.App.2d 348 [104 P.2d 860], is sometimes cited as negativing such an action, there the president of the Workers Alliance of California, who sued *in his own behalf* was denied recovery. He sought damages for defamatory statements made about "officials" of the Alliance. The court concluded that, since the Alliance included at least 162 "officials," the statement did not indicate whether it applied to plaintiff. This holding clearly does not apply to a suit by the union itself for libel of the entity.

Corporations may sue and recover for damages arising from defamation of the entity. (Note (1928) 52 A.L.R. 1199; Note (1933) 86 A.L.R. 442; Rest., Torts, § 561.) Partnerships may recover as such for damages when defamed. (Rest., Torts, § 562.) Actions for recovery of damages by unions resulting from defamation of the entity have been allowed in at least two American cases. (*Kirkman* v. *Westchester Newspapers* (1942) 287 N.Y. 373 [39 N.E.2d 919]; *Lubliner* v. *Reinlib* (1944) 184 Misc. 472 [50 N.Y.S.2d 786].) Similarly, such an action is recognized by the English courts. (*National Union of General & Municipal Workers* v. *Gillian* (1946) K.B. 81; *Willis & The London Soc. of Compositors* v. *Brooks* (1947) 1 All E.R. 191.)[8]

In view of the rules with regard to corporations and partnerships, and in light of our recent decisions, we answer the second question affirmatively: A labor union may sue for libel of the union as an entity.

In summary, we have cited the decisions that have noted a growing social responsibility of labor unions and that have

---

[8]The Court of Appeal in the *National Union* case reached its decision on the basis of *Taff Vale Ry. Co.* v. *Amalgamated Soc. of Ry. Servants* (1901) A.C. 426, which, similar to our decision in *Marshall*, concluded that the union was liable as an entity for its torts. The Court of Appeals reasoned that if the union was suable for its torts, the union should be able to sue in turn for torts it suffered; the court saw no difference in this regard between defamation and other torts.

recognized that inherent in such responsibility is suability. If, however, we hold that these organizations are thus subject to suit but that they cannot sue, we create a gross anomaly. We cannot arbitrarily split so obvious an equation.[9]

The trial court's judgment of dismissal is reversed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and Peek, J., concurred.

[9]As in *Marshall* we limit our holding to labor unions, leaving to future development the rule to be applied to other types of unincorporated associations. (57 Cal.2d 781, 787 fn. 1.)