[L. A. No. 28579.    In Bank.    Jan. 27, 1966.]

DIRECTORS GUILD OF AMERICA, INC., et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; JOSEPH P. BYRNE, Real Party in Interest.

Youngman, Hungate & Leopold, Richard Hungate and David E. Lindgren for Petitioners.

No appearance for Respondent.

Richard W. Lund and John S. Welch for Real Party in Interest.

TOBRINER, J.—Petitioner prays for a writ of prohibition to restrain further prosecution of a pending superior court action in which plaintiff (real party in interest) sought relief by way of damages and injunction on the ground that a labor union arbitrarily excluded him from membership and discriminatorily barred him from employment which he would

have otherwise obtained. Since plaintiff's action raises the issue of whether federal labor legislation preempts the state jurisdiction, we must, pursuant to United States Supreme Court decisions, decide whether or not the action essentially turns upon conduct arguably subject to the federal statute.

We shall point out that the uncertain course of decision of the United States Supreme Court as to federal preemption in labor relations finally led to the rule that the state could not exercise jurisdiction in matters which were arguably subject to the protections or the prohibitions of the National Labor Relations Act as amended (61 Stat. 136 (1947), 29 U.S.C. § 141 et seq.), hereinafter called the Act. Indeed the California courts have recognized that the federal enactment preempts the cause of action founded upon discrimination at the employment level. ▓▓ But the truly difficult question appears in the complaint, such as the instant one, that alleges that plaintiff suffered both job discrimination by the union and arbitrary exclusion from the union. In such event, as we explain, the Supreme Court holds that the issue of preemption depends on the "crux" of the cause of action: if the cause centers upon job discrimination, the state court may not proceed; if it turns upon acquisition or restoration of union membership, the state court may act. ▓▓ We shall show that the instant complaint speaks in the language of discrimination, alleging that the employer's refusal of employment emanated from union control of the job. Since the complaint pivots on job discrimination the federal statute preempts the state jurisdiction.

▓▓ We point out, further, that plaintiff, in the absence of an allegation of employment, cannot prevail upon the alternative theory that he is entitled to union membership even if the union did not have a union shop contract. Plaintiff cannot compel union membership unless the union arbitrarily denies him membership despite his employment or unless the union, exercising control over the job, discriminatorily prevents his employment. As we have seen, the Act exclusively covers the union's discriminatory interference with employment; the cause as to the union's arbitrary exclusion of employed applicants fails here because the employee does not allege his employment.

The complaint sets forth that in August 1964 a motion picture production company, Stage Five Productions, determined to employ plaintiff in the capacity of second assistant

director for the filming of the television series "Ozzie and Harriet." In September 1964 plaintiff applied for admission into membership in the defendant Directors Guild of America, Inc. (hereinafter called Guild), a labor organization representing directors, assistant directors, and other production personnel in the motion picture and related industries. Although plaintiff tendered the requisite initiation fee and dues and otherwise fulfilled all the formal requirements for membership prescribed in the Guild constitution and bylaws, defendants refused to admit him. Such arbitrary refusal resulted from the Guild's practice of refusing membership to any person not a relative of an existing member unless the defendant officers chose to admit him for reasons of personal friendship or favoritism.

According to plaintiff, the Guild maintains closed shop conditions in the industry both by means of oral agreements with many producers that they will employ only Guild members as well as by means of threats to the remaining producers that they will encounter labor difficulties if they do not employ Guild members. The Guild's bylaws likewise obligate the Guild members to refuse to work with an employee who is not a member of the Guild.

Plaintiff alleges that in order to coerce Stage Five not to employ him defendants notified it that if it used plaintiff as a second assistant director the Guild would call the first assistant director off the job. The Guild also wrote to the Guild members then employed by Stage Five informing them that Stage Five proposed to employ plaintiff in the stated capacity and that, since he was not a member of the Guild, the above-mentioned provision of the bylaws applied. As a result of these pressures Stage Five refused to employ plaintiff as second assistant director.

The complaint purports to set forth two causes of action. The first in substance alleges that "although Stage Five did . . . want to use plaintiff in the capacity of Second Assistant Director" it did, because of the Guild's arbitrary rejection of plaintiff from membership and because of its coercive tactics, "refuse, and has continuously refused to employ plaintiff in such capacity." The first cause further states that "as declared by the California Supreme Court in *James* v. *Marinship Corp.* (1945) 25 Cal.2d 721, 731 [155 P.2d 329, 160 A.L.R. 900], the maintenance of a closed shop industry by a union that also maintains a closed union is

contrary to the public policy of the State of California.'' The second cause alleges that by such conduct it ''tortiously interfered with and prevented plaintiff from being able to enter into such advantageous employment contract.''

Subsequent to the date of filing the superior court action, plaintiff brought charges before the National Labor Relations Board alleging that defendants committed unfair labor practices under section 8 of the Act. No question arises here but that the involved employment affects interstate commerce.

Defendants rest their request for a writ of prohibition upon a claimed federal preemption on the ground that plaintiff's maintenance of a closed shop in conjunction with a closed union composes conduct condemned by the Act. Our task narrows to a determination of whether plaintiff's asserted state relief turns upon conduct arguably regulated by the Act. To resolve that issue we first briefly survey the bramble-bush field of federal preemption.

After a tortuous course in evolving a definition of the permissible scope of state jurisdiction in the field of labor relations, the United States Supreme Court has now held that except in cases involving the preservation of the domestic peace the state jurisdiction succumbs to the federal in matters arguably subject to the protections of section 7 or the prohibition of section 8 of the Act. In *San Diego Bldg. Trades Council* v. *Garmon* (1959) 359 U.S. 236, 244 [79 S.Ct. 773, 3 L.Ed.2d 775], the Supreme Court ruled that: ''When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by Section 7 of the National Labor Relations Act, or constitute an unfair labor practice under Section 8, due regard for the federal enactment requires that state jurisdiction must yield.'' The court held that, ''[S]ince the National Labor Relations Board has not adjudicated the status of the conduct for which the State of California seeks to give a remedy in damages, and since such activity is arguably within the compass of Section 7 or Section 8 of the Act, the State's jurisdiction is displaced.'' (P. 246.)

Section 8(a)(3) of the Act declares in substance that it is an unfair labor practice for an employer by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization, provided that an employer may enter into an agreement, requiring membership in a union as

a condition of employment, with a labor organization which is the collective bargaining agent of its employees. Section 8(b)(2) of the Act makes it an unfair labor practice for a labor organization to cause or attempt to cause an employer to discriminate against an employee to whom membership in the union has been denied on grounds other than failure to tender the periodic dues and the initiation fee uniformly required as a condition of acquiring or retaining membership.

This court has acknowledged that the federal act would foreclose the state in a case involving interstate commerce which turned upon union discrimination that prevented the complainant's employment. In *Thorman* v. *International Alliance etc. Employees* (1958) 49 Cal.2d 629 [320 P.2d 494], the applicant for membership prayed both for admission to the union, which had arbitrarily rejected his application, and for a prohibition of discrimination by the union, which had prevented his employment upon the job. The court granted relief but noted that it could not do so "in controversies involving commerce between the states," (p. 632) and held that the record before it failed "to suggest that the employment from which plaintiff was deprived was one which affected interstate commerce." (P. 633.)

Justice Traynor, dissenting upon the ground that the record did disclose an involvement with interstate commerce, concluded that the matter was preempted. He stated ". . . the board could order the union to terminate the unfair labor practice. If the union did so by admitting plaintiff to membership, he would receive the very relief requested. If the union did so by terminating the discrimination, it would thereby terminate the closed-shop, and plaintiff would not be entitled to relief in the courts of this state. . . ." (*Thorman* v. *International Alliance etc. Employees, supra,* 49 Cal.2d 629, 638; to the same effect, *Fullerton* v. *International Sound Technicians* (1961) 194 Cal.App.2d 801, 806-813 [15 Cal. Rptr. 451]; *International Sound Technicians* v. *Superior Court* (1956) 141 Cal.App.2d 23 [296 P.2d 395]; see *Grunwald-Marx, Inc.* v. *Los Angeles Joint Board* (1959) 52 Cal.2d 568, 579-580 [343 P.2d 23]; Wellington, *Union Democracy and Fair Representation* (1958) 67 Yale L.J. 1327, 1344, fn. 88.)

If, then, this court has indicated that the state cannot proceed in a case which involves union discrimination as to

employment, which is covered by the Act, we must determine whether the state is likewise preempted as to a complaint which seeks not only placement on the job but also admission to the union. Recent United States Supreme Court cases, *International Assn. of Machinists* v. *Gonzales* (1958) 356 U.S. 617 [78 S.Ct. 923, 2 L.Ed.2d 1018], *United Assn. of Journeymen & Apprentices* v. *Borden* (1962) 373 U.S. 690 [83 S.Ct. 1423, 10 L.Ed.2d 638], and *International Assn. etc. Ironworkers Union* v. *Perko* (1963) 373 U.S. 701 [83 S.Ct. 1429, 10 L.Ed.2d 646], indicate the proper resolution of this issue.

In *Gonzales* the United States Supreme Court held that a state court could exercise jurisdiction to entertain an action by one whom the union arbitrarily expelled; the state court could order reinstatement and award damages for lost wages. Justice Frankfurter, writing for the majority, said: ". . . the protection of union members in their rights as members from arbitrary conduct by unions and union officers has not been undertaken by federal law, and indeed the assertion of any such power has been expressly denied. . . . Thus, to preclude a state court from exerting its traditional jurisdiction to determine and enforce the rights of union membership would in many cases leave an unjustly ousted member without remedy for the restoration of his important union rights." (356 U.S. at p. 620.) The Supreme Court held that Gonzales' claim did not directly turn on employment relations but upon the union's internal affairs. As Justice Frankfurter said, "The suit did not purport to remedy or regulate union conduct on the ground that it was designed to bring about employer discrimination against an employee, the evil the Board is concerned to strike at as an unfair labor practice under § 8(b)(2)." (356 U.S. at p. 622.)

On the other hand, in *Borden* the court held that the questioned union activity related to job discrimination, conduct which arguably fell under the exclusive jurisdiction of the board.[1] There the plaintiff, a member of a Louisiana local

---

[1]In *International Assn. etc. Ironworkers Union* v. *Perko* (1963) 373 U.S. 701, 705 [83 S.Ct. 1429, 10 L.Ed.2d 646], the court pointed out: "As in *Borden,* the crux of the action here concerned alleged interference with the plaintiff's existing or prospective employment relations and was not directed to internal union matters. Indeed the state court itself observed that 'Plaintiff is not attempting to secure any redress for loss of rights as a member of the union.' . . . Thus there was no permissible state remedy to which the award of consequential damages for loss of earnings might be subordinated."

plumbers union, attempted to secure employment with a construction company in Dallas, Texas. The company did its hiring by means of referral from the local union. When the local union refused plaintiff such reference, the company in turn rejected him; plaintiff brought suit upon the ground that the union improperly discriminated against him in assignment for jobs. The Supreme Court held that the "suit involved here was focused principally, if not entirely, on the union's actions with respect to Borden's efforts to obtain employment." (373 U.S. at p. 697.) Using the language of *Gonzales* the court said: "the 'crux' of the action . . . concerned Borden's employment relations and involved conduct arguably subject to the Board's jurisdiction." (*Id.*) The court contrasted the situation before it with that of *Gonzales,* which "turned on the Court's conclusion that the lawsuit was focused on purely internal union matters, i.e., on relations between the individual plaintiff and the union not having to do directly with matters of employment, and that the principal relief sought was restoration of union membership rights." (*Id.*)

If, then, the state court is confronted with a case, such as the instant one, which apparently embraces both the union's discrimination as to employment and the union's arbitrary refusal to afford membership, we must ascertain the focus or crux of the cause of action to determine if it essentially turns upon conduct which is arguably regulated by the federal act or, instead, principally rests upon conduct for which the state affords relief.

We have concluded that plaintiff's first cause of action essentially involves discrimination as to employment. Plaintiff complains that the union's refusal to afford him membership and its concomitant coercive activities have prevented him from obtaining the second assistant directorship. The complaint is founded upon discrimination; its self-evident purpose is to obtain plaintiff's placement on the job. Plaintiff's second cause of action likewise involves such discrimination; it alleges the union's tortious interference "prevented plaintiff from being able to enter into such . . . employment contract." Thus both causes pivot upon job discrimination; yet the finding of such discrimination lies exclusively with the board.

As the court stated in *Borden,* even "if it is assumed that the refusal *and the resulting inability to obtain employment*

were in some way based on respondent's actual or believed failure to comply with internal union rules, it is certainly 'arguable' that the union's conduct violated § 8(b)(1)(A), by restraining or coercing Borden in the exercise of his protected right to refrain from observing those rules, and § 8(b)(2), by causing an employer to discriminate against Borden in violation of § 8(a)(3)." (373 U.S. 690, 694.)

Nor can we predicate relief to plaintiff upon various alternative grounds which he suggests to us.[2] Plaintiff argues that he is entitled to membership even if the union did not enforce a union shop contract or otherwise engage in discrimination against him as to employment, alleging that "an arbitrary and discriminatory membership policy is contrary to public policy *without regard* to whether the defendants maintain closed shop conditions." (Italics added.) We have seen that the board exercises exclusive jurisdiction over a matter of union discrimination in employment; plaintiff now

---

[2]Plaintiff urges two other contentions not discussed in the text. He contends first that to the extent that the complaint involves the illegality of a union security arrangement under state law, section 14(b) of the Act has reserved to the state jurisdiction to enforce its own policy as to such arrangement. Plaintiff relies upon *Retail Clerks Intl. Assn.* v. *Schermerhorn* (1963) 375 U.S. 96 [84 S.Ct. 219, 11 L.Ed.2d 179], which held that the section did protect the state's jurisdiction to enforce a right to work law. Plaintiff claims that this case holds that "the states retain jurisdiction to enforce their own prohibitions even though there may also be illegality" under the Act. On the present facts we do not reach that issue, for *Schermerhorn* also declares, "state power, recognized by § 14(b), begins *only with actual negotiation and execution of the type of agreement described by § 14(b)*. Absent such an agreement, conduct arguably an unfair labor practice would be a matter for the National Labor Relations Board under *Garmon*." (375 U.S. 96, at p. 105; emphasis in original.) Since plaintiff does not allege that Stage Five and the Guild executed a union security agreement of the type described in section 14(b), *Schermerhorn* does not support state jurisdiction in the instant case.

Plaintiff's further contention that he is a "supervisor" within the meaning of section 2(11) of the Act and that therefore the present controversy is not subject to the cognizance of the board, likewise fails. The state jurisdiction is preempted unless plaintiff is "any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay-off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibility to direct them, or to adjust their grievances, or effectively to recommend such action, . . ." (§ 2(11) of the Act.) Apparently relying solely on the allegation that he is an "assistant director" of films to be shown on television, plaintiff fails to submit the facts from which we could make a determination that he is a "supervisor." Since plaintiff presents no basis for a finding that it is reasonably probable that he falls within this category, we cannot support state jurisdiction on that ground. (*International Assn. etc. Union* v. *Perko, supra,* 373 U.S. 701; *Hanna Mining Co.* v. *Marine Engineers Beneficial Assn.* (1965) 382 U.S. 181 [86 S.Ct. 327, 15 L.Ed.2d 254].)

asks relief irrespective of such discrimination. We shall explain that a union cannot arbitrarily exclude from membership a person employed in the craft or industry whose employees are represented by the union even when the union does not have a union shop contract. But relief in such a situation can be afforded only to those who are employed in such a craft or industry. Plaintiff does not allege such employment.

If plaintiff had properly alleged that he had actually *been employed* as a second assistant director and that the union had arbitrarily refused him membership, our previous decisions, and the reasoning upon which they rest, would justify a ruling affording him union membership.

In the landmark case of *James* v. *Marinship Corp., supra,* 25 Cal.2d 721, this court enjoined the enforcement of a union shop contract under which the union required Negroes to become members of an "auxiliary" local but denied them full membership in the "white" local which negotiated the contracts, handled grievances and dispatched employees to their jobs. Holding that since the union controlled a "monopoly" of jobs through its closed shop contract, it occupied a "quasi public position similar to that of a public service business and [had] . . . corresponding obligations" (p. 731), Chief Justice Gibson prophetically stated, "It is difficult to see how a union can fairly represent *all* the employees of a bargaining unit unless it is willing to admit all to membership, giving them the opportunity to vote for union leaders and to participate in determining union policies." (P. 735.)

In *Williams* v. *International etc. of Boilermakers* (1946) 27 Cal.2d 586 [165 P.2d 903], the court held that the principle of *James* applied not only in the case of a "monopoly" control of jobs but in any situation of a denial of employment because of arbitrary exclusion from a union. Again the court through Chief Justice Gibson reiterated the basic proposition: "The union as the bargaining agent of the employees selected in accordance with the act has the duty to represent *all* employees, without discrimination because of race or color, and it may be compelled to do so by judicial action. (Cf. *Steele* v. *Louisville & Nashville R.R. Co.,* 323 U.S. 192 [65 S.Ct. 226, 89 L.Ed. 173]; *Tunstall* v. *Brotherhood of Locomotive Firemen & Enginemen,* 323 U.S. 210 [65 S.Ct. 235, 89 L.Ed. 187].)" (P. 592.)

The philosophy of these cases finds its ultimate application in the ruling of *Thorman* v. *International Alliance etc. Employees, supra,* 49 Cal.2d 629, which upheld a writ of mandamus directing a union to admit to membership a motion picture projectionist whom it had arbitrarily excluded. Plaintiff, a member of an "auxiliary" union, subject to displacement from his job by senior members of the "main" local, could not participate in the affairs of the main local or negotiation of contracts; he could become a member of that local only by a two-thirds vote, a requirement which the court apparently held to be arbitrary. As one commentator points out, "It is difficult to explain such an order except on the theory that an individual within a bargaining unit represented by a union has a right, quite apart from his right to work, to participate in that union's affairs. Indeed, in the case of a union operating as a statutory bargaining representative, under state or federal legislation, that theory would seem to follow from the position of the United States Supreme Court that such a union has a statutory, if not constitutional, obligation to represent fairly all employees within the bargaining unit." (Grodin, Union Government & the Law: British and American Experiences (1961) 179.)

The decisions of this court thus recognize that membership in the union means more than mere personal or social accommodation. Such membership affords to the employee not only the opportunity to participate in the negotiation of the contract governing his employment but also the chance to engage in the institutional life of the union. Although in the case which involves interstate commerce the union must legally give fair representation to all the appropriate employees, whether or not they are members of the union,[3] the union official, in the nature of political realities, will in all likelihood more diligently represent union members, who can

---

[3]One commentator describes the duty of fair representation as follows: "The first significant case involving the duty of fair representation was *Steele* v. *Louisville &N. R. Co.* (1944) 323 U.S. 192 [65 S.Ct. 226, 89 L.Ed. 173]. At issue was the power of a union to negotiate, with an employer, an agreement that had as its conspicuous purpose and consequence first the limitation and then the destruction of the employment opportunities of the Negroes represented by that union. The Supreme Court declared the contract to be unlawful. Building upon the federal statutory authority of the union to act as the exclusive bargaining representative for all the workers in the bargaining unit, the Court held that: 'Congress has seen fit to clothe the bargaining representative with powers comparable to those possessed by a legislative body both to create and to restrict the rights of those whom it represents . . . but it has also imposed on the representative a corresponding duty . . . to exercise fairly

vote him out of office, than employees whom he must serve only as a matter of abstract law.

Our decisions further recognize that the union functions as the medium for the exercise of industrial franchise. As Summers puts it, "The right to join a union involves the right to an economic ballot." (*The Right to Join a Union* (1947) 47 Colum. L.Rev. 33.) Participation in the union's affairs by the workman compares to the participation of the citizen in the affairs of his community. The union, as a kind of public service institution,[4] affords to its members the opportunity to record themselves upon all matters affecting their relationships with the employer; it serves likewise as a vehicle for the expression of the membership's position on political and community issues. The shadowy right to "fair representation" by the union, accorded by the Act, is by no means the same as the hard concrete ability to vote and to participate in the affairs of the union.[5]

The above grounds for condemnation of arbitrary rejection from membership apply as forcefully to the situation in which the union does not have a union shop contract as to

the power conferred upon it in behalf of all those for whom it acts, without hostile discrimination against them.' " (Rosen, *Fair Representation, Contract Breach and Fiduciary Obligations: Unions, Union Officials and the Worker in Collective Bargaining* (1964) 15 Hastings L.J. 391, 397.) This principle, originally applied to the Railway Labor Act (48 Stat. 1185, 45 U.S.C. § 151 et seq.) has been extended to the Act. See *Syres* v. *Oil Workers International Union* (1956) 350 U.S. 892 [76 S.Ct. 152, 100 L.Ed. 785]; *Ford Motor Co.* v. *Huffman* (1952) 345 U.S. 330 [73 S.Ct. 681, 97 L.Ed. 1048].

[4]See *Marshall* v. *International Longshoremen's & Warehousemen's Union* (1962) 57 Cal.2d 781 [22 Cal.Rptr. 211, 371 P.2d 987]; *Daniels* v. *Sanitarium Assn., Inc.* (1963) 59 Cal.2d 602 [30 Cal.Rptr. 828, 381 P.2d 652].

[5]"[E]xclusion from the union may deprive the individual of various social benefits provided by the organization. . . . For example, pensions or medical insurance may be difficult to obtain through other channels, and strike benefits are provided *only* by the union. . . . Denial of membership [also] bars the individual from any participation in the union's decisions which affect his welfare. Thus, he cannot speak at union meetings; he cannot vote in a union referenda; and he cannot be a candidate for union office. Where the union exercises substantial control, the individual's right to participate may be considered the most important interest involved, especially where power has been allocated to the union for the purpose of strengthening the democratic process." (Summers, *Internal Relations Between Unions and Their Members* (1964) 18 Rutgers L.Rev. 236, 262-263; Wellington, *Union Democracy & Fair Representation* (1958) 67 Yale L.J. 1327; to the same effect, *Mitchell* v. *International Assn. of Machinists* (1961) 196 Cal.App.2d 796, 799 [16 Cal. Rptr. 813]; *Mooney* v. *Bartenders Union Local No. 284* (1957) 48 Cal.2d 841, 844 [313 P.2d 857]; see *Daniels* v. *Sanitarium Assn., Inc., supra*, 59 Cal.2d 602, 608.)

that in which it does. The need of the worker for union participation is not reduced because the union does not enjoy a union shop; the basis for membership lies in the right and desirability of representation, not in the union's economic control of the job.

Our analysis applies, however, only to union membership for those employed in the appropriate craft or industry. To hold that a union must admit *all* persons who seek membership but are not employed in the craft or industry whose employees are represented by the union would raise serious social and economic questions. Any such sweeping ruling would subject the union to an influx of unemployed persons who could distort its function from representation of those working in the relevant craft or industry to purposes alien to such objectives. It would set up for state courts a test as to the scope of the union's obligation of representation which would conflict with the National Labor Relation Board's counterpart concept of the appropriate bargaining unit.[6] It could gravely affect the basic structure of the union. ▉ Although we would hold that the union, even in the absence of the union shop must admit to membership all qualified employed applicants, the instant complaint, lacking such allegation of employment, must fail.[7]

▉ We conclude that the instant case does not present a matter for state court relief; that the crux of the complaint necessarily pertains to employment relations rather than to union membership. As a result, as we have said, the federal act preempts. But in so doing, we do not rule that preemption extends to the lawsuit which, in the words of *Borden*, "focused on purely internal union matters, i.e., on relations

---

[6]Section 9(a) of the Act provides: ''Representatives designated or selected for the purposes of collective bargaining by the majority of the *employees* in a unit appropriate for such purposes, shall be the exclusive representatives of all the *employees* in such unit. . . .'' Section 9(b) provides: ''The Board shall decide in each case whether, in order to assure to *employees* the fullest freedom in exercising the rights guaranteed by this Act, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof: . . . '' (Italics added.) Section 2(3) provides the statutory definition of ''employee.''

[7]Thus we do not face the issue which would be presented if the board should ultimately hold that the union *had* engaged in discriminatory conduct and ordered plaintiff's employment, which action by the board was followed by union refusal of membership; or if, further, plaintiff were thereafter *employed* as a second assistant director, and the union had then arbitrarily refused him membership. Such a cause would necessarily be conditioned upon the arbitrary rejection of plaintiff from membership and upon the actual fact of plaintiff's employment.

between the individual plaintiff and the union not having to do directly with matters of employment, . . .'' (373 U.S. 690, 697.) The complaint which draws into issue the right to union membership alone involves the factors which we have discussed above; as to a suit which met the foregoing requirements, relief at the state level would be appropriate.

Let a peremptory writ of prohibition issue.

Traynor, C. J., McComb, J., Peters, J., Peek, J., Mosk, J., and Burke, J., concurred.