### ANNA ZAHRIJCZUK *v.* WATER POLLUTION CONTROL AUTHORITY OF THE TOWN OF BRANFORD

Superior Court, Judicial District of New Haven
File No. CV-11-6024727

Memorandum filed April 10, 2012

*Robert C. Ruggiero, Jr.,* for the plaintiff.

*Kevin M. Tighe, Lynn McCormick* and *Thomas R. Gerarde,* for the defendant.

BLUE, J.

## I

## INTRODUCTION

"[W]ater pollution control authorities are quasi-municipal corporations created pursuant to statute . . . ." *Forest Walk, LLC* v. *Water Pollution Control Authority,* 291 Conn. 271, 281, 968 A.2d 345 (2009). The principal question presented by the Motion To Dismiss now before the court is whether a water pollution control authority has the legal capacity to be sued. For the reasons stated below, the answer to this question is Yes.

For purposes of this motion, the factual assertions set forth in the Complaint are not contested. The plaintiff, Anna Zahrijczuk, owns a house in Branford. Her sewerage system is operated by the defendant, Branford Water Pollution Control Authority ("Authority"). On October 10, 2009, the Authority's sewerage system overflowed and damaged Zahrijczuk's property.

On October 8, 2011, Zahrijczuk commenced this action against the Authority by service of process. She is the sole plaintiff, and the Authority is the sole defendant. Her Complaint consists of four counts, alleging various forms of negligence and nuisance.

On December 15, 2011, the Authority filed the Motion To Dismiss now before the court. The Motion contends that, "This Court lacks jurisdiction because (1) the Branford Water Pollution Control Authority is not an

independent legal entity which can be sued; and (2) the writ/summons lacks a proper recognizance." The Motion was argued on April 2, 2012. Supplemental briefs were filed on April 9, 2012.

## II

### THE AUTHORITY'S CAPACITY TO BE SUED

The Authority's principal contention is that it lacks the legal capacity to be sued. This claim requires a careful review of the complex statutory scheme governing water pollution control authorities.

Our Supreme Court's description of water pollution control authorities as "quasi-municipal corporations"; *Forest Walk, LLC* v. *Water Pollution Control Authority*, supra, 291 Conn. 281; while plainly establishing that such authorities have a legal status of some sort, does not clarify exactly what that status is. It would be better, as McQuillin explains, "to confine the term 'quasi-corporation' to organizations not strictly corporations at all, and to designate as 'quasi-municipal' those organizations that are deemed corporations but which are held not municipal corporations . . . ." 1 E. McQuillin, The Law of Municipal Corporations (3d Ed. Rev. 2010) § 2:17, pp. 202–203. "What is meant by the words '*quasi* corporation,' as used in the authorities, is not always very clear. It is a phrase generally applied to a body which exercises certain functions of a corporate character, but which has not been created a corporation by any statute, general or special." (Emphasis in original.) *School District* v. *Ins. Co.*, 103 U.S. 707, 708, 26 L. Ed. 601 (1881).[1]

The concept of legal capacity to sue or be sued is also the subject of confusion in the law. There is surprisingly

---

[1] The word "quasi" has been irreverently defined as, "A word, used by lawyers when they cannot define their subject matter exactly; perhaps when they don't really know what they are talking about." J. Gray, Lawyer's Latin (2006) 110.

little Connecticut jurisprudence on the subject at the appellate level. Superior Court decisions have largely considered two factors: (1) whether the entity in question is a distinct "body politic" under state law, and (2) whether a specific statute enables the entity to sue and be sued. *Luysterborghs* v. *Pension & Retirement Board*, 50 Conn. Sup. 351, 355, 927 A.2d 385 (2007) (citing Superior Court authorities).

Although the Superior Court authorities just cited are entitled to respect, their approach, thus summarized, raises three distinct problems. First, the cited factors will not necessarily point in the same direction in a given case. An entity could be a "body politic" and yet not the subject of a "specific statute" enabling it to sue and be sued. (As discussed below, this is arguably the case here.) Conversely, the legislature could, at least hypothetically, pass a statute specifically allowing an entity other than a "body politic" to sue and be sued. Second, the existing approach is in tension with serious issues of public policy long articulated in the jurisprudence of the United States Supreme Court and the reviewing courts of sister states. Third, the cited approach overlooks General Statutes § 52-73 and the centuries of Connecticut jurisprudence construing that ancient statute. For these reasons, the legal issue of the capacity to sue and be sued must be examined more deeply.

The New York Court of Appeals has helpfully divided this concept into three separate analytical categories:

"Capacity, or the lack thereof, sometimes depends purely upon a litigant's status. A natural person's status as an infant, an adjudicated incompetent or, formerly, a felony prisoner, for example, could disqualify that individual from seeking relief in court . . . .

"Another category of capacity problems . . . arises in the context of suits brought by artificial entities.

Business corporations, for example, are creatures of statute and, as such, require statutory authority to sue and be sued . . . .

"Governmental entities created by legislative enactment present similar capacity problems. Being artificial creatures of statute, such entities have neither an inherent nor a common-law right to sue. Rather, their right to sue, if it exists at all, must be derived from the relevant enabling legislation or some other concrete statutory predicate . . . . The principle is a well-known one, originating in the more general canon that 'a creature of the State . . . has no power other than that given it by the Legislature, either explicitly or by necessary implication' . . . ." (Citations omitted.) *Community Board 7* v. *Schaffer*, 84 N.Y.2d 148, 155–56, 639 N.E.2d 1, 615 N.Y.S.2d 644 (1994).

Water pollution control authorities in Connecticut fall within the third *Community Board 7* category. Although they are "quasi-municipal corporations," and, as such, bodies politic within the confines of larger municipal corporations; *Larkin* v. *Bontatibus*, 145 Conn. 570, 576, 145 A.2d 133 (1958); they remain artificial creatures of statute. As such, their capacity to sue or be sued, if it exists at all, "must be derived from the relevant enabling legislation . . . ." (Citations omitted.) *Community Board 7* v. *Schaffer*, supra, 84 N.Y.2d 156.

This capacity "does not require that in every instance there be express legislative authority . . . . Rather, the capacity to sue [and be sued] may also be inferred as a necessary implication from [the entity's] power[s] and responsibilit[ies], provided, of course, that there is no clear legislative intent negating review . . . ." (Citations omitted; internal quotation marks omitted.) Id.

The court must consequently conduct a careful review of the relevant legislation governing the Authority in the present case. The Authority is established by

Branford Code § 106-1, which gives it all of the powers set forth in General Statutes § 7-246 et seq. It is common ground that neither the Branford Code nor the Connecticut General Statutes *explicitly* grant the Authority the legal capacity to sue or be sued. The question is whether such capacity can fairly be implied from the relevant legislation.

Section 7-246 (a) provides that any municipality may "create a new board or commission to be designated, as the water pollution control authority for such municipality. . . ." As mentioned, the Town of Branford has chosen to create the Authority pursuant to this provision. Branford Code § 106-1.

The only *explicit* statutory provision addressing the capacity to sue or be sued grants the capacity to sue to the *municipality* rather than to the water pollution control authority. General Statutes § 7-258 (a) provides that, in the event of a delinquent charge for connection with or the use of a sewerage system, "The municipality may recover any such charges in a civil action against any person liable therefor. . . ." Section 7-258 (a) does not purport to address the question of capacity to sue or be sued in other contexts.

General Statutes § 7-250 grants water pollution control authorities the capacity to be parties in legal actions in the narrow context of administrative appeals of assessments. A successful administrative appeal does not render the defendant authority liable for monetary damages, and it is difficult to generalize from this provision that the legislature has conferred on the authority the capacity to be sued in other contexts.

The enabling legislation is silent on the capacity of water pollution control authorities to sue or be sued in tort actions. The tort action in the present case, however, plainly arises out of the *operation* of a sewerage system. The legislature has addressed this aspect

of the function of water pollution control authorities in General Statutes § 7-247 (a). That statute provides in relevant part that, "Any municipality by its water pollution control authority may acquire, construct and operate a sewerage system or systems . . . ." The term "operate a sewerage system" is a term of art, statutorily defined as meaning "own, use, equip, reequip, repair, maintain, supervise, manage, operate and perform any act pertinent to the collection, transportation and disposal of sewage . . . ." General Statutes § 7-245 (8).

Section 7-247 (a) thus provides that the entity responsible for the operation of a sewerage system is "[a]ny municipality by its water pollution control authority . . . ." What exactly this Delphic phrase means must now be addressed.

The phrase "[a]ny municipality by its water pollution control authority" clearly means that the "municipality" may be viewed as the operator. Whatever a municipality's status may be with respect to questions of immunity, there is no doubt that it is an entity with the legal capacity to be sued. The "municipality," however, acts through "its water pollution control authority." This is, in essence, a relationship of principal and agent. It is a fair implication from this phraseology that the agent is also a recognizable legal entity with the legal capacity to sue and be sued. It would be anomalous for the legislature to create a principal with the capacity to sue and be sued and create an agent without that same capacity.

Public policy issues of fundamental fairness must now be considered. The United States Supreme Court explained in the seminal case of *United Mine Workers of America* v. *Coronado Coal Co.*, 259 U.S. 344, 42 S. Ct. 570, 66 L. Ed. 975 (1922), that the legal concept of capacity to sue and be sued cannot be determined by historical precedent and technical considerations

alone. In holding that labor unions have the capacity to be sued under the Sherman Act, the Court explained:

"Undoubtedly at common law, an unincorporated association of persons was not recognized as having any other character than a partnership in whatever was done, and it could only sue or be sued in the names of its members, and their liability had to be enforced against each member. . . . But the growth and necessities of these great labor organizations have brought affirmative legal recognition of their existence and usefulness and provisions for their protection, which their members have found necessary. . . . It would be unfortunate if an organization with as great power as this International Union has in the raising of large funds and in directing the conduct of 400,000 members in carrying on, in a wide territory, industrial controversies, and strikes out of which so much unlawful injury to private rights is possible, could assemble its assets to be used therein free from liability for injuries by torts committed in course of such strikes." (Citations omitted.) Id., 385–89.

In determining the capacity of a party to sue and be sued in federal actions, the United States Supreme Court continues to follow the expansive approach of *Coronado Coal Co*. It has specifically explained that, for purposes of federal law, quasi-municipal corporations have the same capacity to be sued as full-fledged municipal corporations. "While the liability of quasi corporations at common law may have differed from that of municipal corporations . . . both were treated equally as legal 'persons.' " (Citation omitted.) *Cook County* v. *United States ex rel. Chandler*, 538 U.S. 119, 127 n.7, 123 S. Ct. 1239, 155 L. Ed. 2d 247 (2003).

The California Supreme Court has elaborated on the modern policy considerations underlying this development:

"We must recognize that the society of today rests upon the foundation of group structures of all types, such as the corporation, the co-operative society, the public utility. Such groups must, of course, operate successfully within the society; one of the prerequisites to that functioning is, generally, liability to suit and opportunity for suit. To frustrate that viability by the imposition of outmoded concepts would be to impair the institutions as well as to impede the judicial process." *Daniels* v. *Sanitarium Assn., Inc.*, 59 Cal. 2d 602, 608, 381 P.2d 652, 30 Cal. Rptr. 808 (1963).

It is thus clear that, "[o]n a national basis, the trend continues to assure legal status to organizations where in fairness it is appropriate." *Barr* v. *United Methodist Church*, 90 Cal. App. 3d 259, 266, 153 Cal. Rptr. 322, cert. denied, 444 U.S. 973, 100 S. Ct. 468, 62 L. Ed. 2d 388 (1979). Although the Court's task in the present case is to determine whether the Authority's enabling legislation fairly implies the right to sue and be sued, this is a judicial task appropriately performed with reference to modern public policy. This Court draws a necessary implication, from the statutory scheme authorizing the Authority's creation and the fact that the Authority, by "operating" a sewerage system, has the ability to cause damage to the persons and property of our citizens, that the Authority should "be part of our legal fabric." *Beta Beta Chapter of Beta Theta Pi Fraternity* v. *May*, 611 So. 2d 889, 894 (Miss. 1992) (en banc).

With these policy considerations in mind, a final provision of the Authority's enabling legislation must now be considered. Chapter 103 of the Connecticut General Statutes, establishing water pollution control authorities, contains a catchall provision, General Statutes § 7-271, which provides that, "Any power granted by this chapter shall be in addition to, and not in derogation of, any power granted to any municipality under the

provisions of any special act *or of any general statute.*" (Emphasis added.) The emphasized words plainly empower the court to consider the attributes granted to water pollution control authorities by statutes outside the four corners of Chapter 103.

One statute not contained in Chapter 103 is especially pertinent to the question presented here. Section 52-73 provides that, "Towns, societies, communities and corporations may prosecute and defend civil actions, may appoint agents to appear in their behalf and may employ attorneys in such actions." This is an ancient statute, first enacted (in somewhat different form) in 1705. 4 Public Records of the Colony of Connecticut 500 (1868). It was given an expansive reading by our Supreme Court at an early date.

In *McLoud* v. *Selby*, 10 Conn. 390 (1835), the Court considered a challenge to a judgment against a school district. The school district in that case had been successfully sued for breach of contract, and the prevailing party attempted to collect the judgment. The defendant argued that the school district had not had the capacity to be sued in the first place. Referring to the statute now codified at § 52-73, the Court resoundingly rejected this argument.

"Is a school district liable to be sued? Upon this point we entertain no doubt. That these corporations are capable of suing, and being sued, would seem to be strongly inferable, from the powers and privileges conferred upon them by the statute. They have power to erect school-houses, to purchase lands on which to erect them, to levy and collect taxes, to appoint treasurers and collectors, and to do all necessary acts, for the purpose of sustaining and regulating schools. They may, therefore, possess property, and may make contracts; and may not these contracts be enforced?

"It has, however, been said, that these *quasi* corporations are not liable to be sued, unless the action is, expressly, given by statute; and in support of this proposition, a number of cases have been cited. . . .

"It may here be remarked, that the only principle involved in these cases, is, that a *quasis* corporation is not liable, at common law for the mere neglect of a corporate duty. But it does not therefore follow, that no action lies against them, unless it be given by statute. Let it once be admitted, (as, indeed, it must be admitted,) that these corporations have the power to make contracts, and there is an end of the question. For it, surely, would be a flagrant departure from all principle, to hold, that such contracts could not be enforced against them. A mechanic builds a school-house, in pursuance of a contract, entered into with the school-district. Could it be endured, that he might not sue on that contract, because an action was not given by statute?

"It need only be added, that it has been the uniform practice, in this state, for individuals to enforce these contracts, by suits at common law against these *quasi* corporations." (Emphasis in original.) Id., 393–94.

The Supreme Court reaffirmed this expansive principle in *Ward* v. *County of Hartford*, 12 Conn. 404 (1838). "[A]lthough the statute does not expressly authorize a suit by a *quasi* corporation, yet if the law of its creation imposes such duties and confers such privileges as require legal remedies for their enforcement and protection, it is fair to infer that those remedies are also granted. . . . This principle we believe to be a sound one." (Citation omitted; emphasis in original.) Id., 406–407.

Our Supreme Court has not revisited the question of the legal capacity of quasi-municipal corporations to sue and be sued in modern times. In practice, however,

it has, in recent decades, decided the merits of a variety of actions brought by or against water pollution control authorities without questioning the capacity of such authorities to sue or be sued in the first place. See *Forest Walk, LLC* v. *Water Pollution Control Authority*, supra, 291 Conn. 271 (administrative appeal brought against authority); *BRT General Corp.* v. *Water Pollution Control Authority*, 265 Conn. 114, 826 A.2d 1109 (2003) (mandamus action brought against authority); *Water Pollution Control Authority* v. *Keeney*, 234 Conn. 488, 662 A.2d 124 (1995) (administrative appeal brought by authority); *Tower Business Park Associates No. 1 Ltd. Partnership* v. *Water Pollution Control Authority*, 213 Conn. 112, 566 A.2d 696 (1989) (administrative appeal brought against authority); *Zizka* v. *Water Pollution Control Authority*, 195 Conn. 682, 490 A.2d 509 (1985) (action for injunctive and declaratory relief brought against authority); *Gaynor-Stafford Industries, Inc.* v. *Water Pollution Control Authority*, 192 Conn. 638, 474 A.2d 752 (administrative appeal brought against authority), cert. denied, 469 U.S. 932, 105 S. Ct. 328, 83 L. Ed. 2d 65 (1984); see also *AvalonBay Communities, Inc.* v. *Sewer Commission*, 270 Conn. 409, 853 A.2d 497 (2004) (mandamus action brought against sewer commission); *Wright* v. *Woodridge Lake Sewer District*, 218 Conn. 144, 588 A.2d 176 (1991) (action for declaratory judgment brought against sewer district); *Branford Sewer Authority* v. *Williams*, 159 Conn. 421, 270 A.2d 546 (1970) (petition brought by sewer authority to assess damages for the taking of an easement).

*Third Taxing District* v. *Lyons*, 35 Conn. App. 795, 647 A.2d 32, cert. denied, 231 Conn. 936, 650 A.2d 173 (1994), relied upon by the Authority, is not in conflict with this case law. While the *named* plaintiff in *Third Taxing District* was indeed a "quasi-municipal corporation"; id.; the *actual* plaintiff "consist[ed] of a group of

electors who reside[d] within the taxing district." Id., 796. *Third Taxing District* simply holds that the *actual* plaintiffs lack standing to bring what is, in essence, a taxpayer's suit in the name of the *named* plaintiff. It does not purport to discuss either § 52-73 or the capacity of quasi-municipal corporations to sue and be sued.

For reasons of precedent, policy, and practice § 52-73 is applicable to quasi-municipal corporations. By virtue of this statute, quasi-municipal corporations have the capacity to sue and be sued under Connecticut law. As mentioned, the same rule applies under federal law. *Cook County* v. *United States ex rel. Chandler*, supra, 538 U.S. 127 n.7.

As mentioned, it is well established that water pollution control authorities are quasi-municipal corporations. *Forest Walk, LLC* v. *Water Pollution Control Authority*, supra, 291 Conn. 281. The Authority is an entity of this description. As such, it has the capacity to be sued. The principal contention of the Motion To Dismiss must consequently fail.

### III

### THE RECOGNIZANCE

The Authority's second (and admittedly secondary) contention is that "the writ/summons lacks a proper recognizance." This contention is based on the fact that the recognizance in the summons is neither filled out nor signed. Zahrijczuk concedes that the summons is defective in that it contains no recognizance. She relies, however, on *Franchi* v. *Farmholme, Inc.*, 191 Conn. 201, 207–208, 464 A.2d 35 (1983), for the proposition that a failure to provide recognizance does not render an action void ab initio. She notes that she voluntarily posted a cash bond by check in the amount of $250.00 prior to the return date. The Court agrees that, under

*Franchi*, it would be inappropriate to dismiss the action under these circumstances.

## IV

## CONCLUSION

The Motion To Dismiss is denied.