**Fred A. ALEXANDER et al., Appellants,**

**v.**

**PACIFIC MARITIME ASSOCIATION, a non-profit corporation et al., Appellees.**

**No. 18324.**

United States Court of Appeals Ninth Circuit.

Feb. 28, 1963.

Howard B. Crittenden, Jr., San Francisco, Cal., for appellants.

Gladstein, Andersen, Leonard & Sibbett, and George R. Andersen, San Francisco, Cal., for appellees I. L. W. U.

Kelso, Cotton & Ernst, and Richard Ernst, San Francisco, Cal., and Marvin C. Taylor, Washington, D. C., for appellees Pacific Maritime Assn., J. A. Robertson, R. J. Pfeiffer, and R. R. Holtgrave.

Before POPE, HAMLIN and MERRILL, Circuit Judges.

MERRILL, Circuit Judge.

This appeal is taken from judgment of the district court dismissing the action of the appellants upon the ground that the complaint did not state a claim within the court's jurisdiction. The holding of the district court was that the appellants were complaining of unfair labor practices under the National Labor Relations Act which were initially within the exclusive jurisdiction of the National Labor Relations Board. The correctness of this determination is the issue upon appeal.

Appellants are ship clerks employed at the Port of San Francisco. They are not union members. The central theme of their complaint is that the International Longshoremen's and Warehousemen's Union, their bargaining agent, with the co-operation of Pacific Maritime Association, the employers' bargaining agent, has discriminated against them and in favor of union members in the manner in which employment and employment benefits have been dispensed under the collective bargaining agreement.

Since the complaint charges both the union and the employer with discrimination against appellants solely on the basis of their nonunion status, §§ 8(a) (3), 8 (b) (2) of the National Labor Relations Act would arguably apply to the conduct to which appellants object.[1] Accordingly, the district court ruled, under San

1. Under § 8(a) (3) an employer is prohibited from discriminating "in regard to hire or tenure of employment or any term or condition of employment to encourage

Diego Building Trades Council v. Garmon (1959), 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775, that initial jurisdiction lay exclusively with the National Labor Relations Board.

Appellants assert that this constituted error. They rely upon a line of cases which recognizes federal court jurisdiction to enforce the duty of fair representation owed by the unions to those they represent. Those cases, however, do not support appellants' contention. In none of them was there available any administrative remedy which would serve to deprive the federal courts of jurisdiction. Therefore the doctrine of primary jurisidiction of the National Labor Relations Board never was brought into play.

Many of the cases cited arose under the Railway Labor Act, which makes no provision for administrative means for correcting breaches of the duty of fair representation.[2] The remaining cases cited involved acts of discrimination which were not, even arguably, unfair labor practices under the National Labor Relations Act. As an example, the discrimination charged in Syres v. Oil Workers (1956), 350 U.S. 892, 76 S.Ct. 152, 100 L.Ed. 785, and Hardcastle v. Western Greyhound Lines (9 Cir., 1962), 303 F.2d 182, was against union members and was clearly not antiunion in character. Further, as distinguished from Radio Officers Union of Commercial Telegraphers Union, A. F. L. v. National Labor Relations Board (1954), 347 U.S. 17, 74 S.Ct. 323, 98 L.Ed. 455, there was in those cases no charge that the discrimination was aimed at securing active rather than merely passive union membership.

While resort to the federal courts was proper under those circumstances, it would be improper here in the face of the competence of the National Labor Relations Board to handle the alleged discrimination.

█ If a claim cognizable by the federal courts is stated by the complaint herein, it is not, therefore, for the reasons asserted in the district court, but must be by virtue of § 301 of the Act[3] as construed by Smith v. Evening News Association (1962), 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246. In that case it was held that primary jurisdiction of the board does not apply to prevent the bringing of suit in the federal courts by an individual employee for violation of a collective bargaining agreement.

The opinion in that case was handed down by the Supreme Court while this appeal was pending. By that opinion the law was first established (contrary to the holding in Association of Westinghouse Salaried Employees v. Westinghouse Corporation (1955), 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510) that a claim of damages for breach of a collective bargaining agreement might under § 301 be asserted by an individual employee.[4]

---

* * * membership in any labor organization." Section 8(b) (2) places an equivalent restraint upon unions, by making it an unfair labor practice for a union "to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3) * * *." Finally, it is unfair labor practice, falling within § 8(b) (1), for a union to restrain or coerce employees in the exercise of § 7 rights, including the right to refrain from engaging in union activities.

2. E. g., Conley v. Gibson (1957), 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80; Graham v. Brotherhood of Locomotive Firemen (1949), 338 U.S. 232, 70 S.Ct. 14, 94 L.Ed. 22; Tunstall v. Brotherhood of Locomotive Firemen (1944), 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187; Steele v. Louisville & N. R. R. (1944), 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173; Ferro v. Railway Express Agency Inc. (2 Cir., 1961), 296 F.2d 847.

3. "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

4. It should be noted that Smith v. Evening News specifically left undecided the ques-

Since, in the court below, it was not understood that such was the law, the complaint is not couched in § 301 terms and the applicability of that section as construed in Smith v. Evening News is presented for the first time upon this appeal. This is the question to which we address ourselves.

The complaint alleges that ILWU is the exclusive collective bargaining agent for all ship clerks in the maritime industry on the Pacific Coast; that Local 34 is the organization designated by ILWU to represent ship clerks under that agreement for the Port of San Francisco; that Pacific Maritime Association is an Association of ship owners and maritime employers and is the collective bargaining agent for its members; that ILWU and Pacific Maritime Association have entered into a collective bargaining agreement which governs the employment of ship clerks in the Port of San Francisco.

The complaint alleges:

"That said bargaining agreement contains provisions that persons employed as Ship Clerks thereunder who constitute the full-time working force and depend on such work as Ship Clerks for their livelihood are designated as 'registered' Ship Clerks in said written agreement in contrast to those who are only seasonal or occasional members of the working force of Ship Clerks and who depend upon other employment for their principal livelihood and are not permanent full-time members of the regular working force. That said bargaining agreement designates said 'registration' and under Sec. 14 of the Master Agreement for Checkers and Related Classifications, there is provided:

" '(a) All registration shall be by mutual consent, except that this section shall not deprive either party to the agreement from demanding additions to or subtractions from the registration lists as may be necessary to meet the needs of the port. When objecting to the registration of any man, members of the Joint Port Labor Relations Committee shall be required to give reasons therefor.

" '(b) When it becomes necessary to drop men from the registration list, seniority on the list shall prevail.'

" 'That Sec. 15 of the Agreement provides:

" '(a) When it becomes necessary to add men to the registration list, first preference of registration shall be given to men who now have partial or limited registration and employment in the industry; second preference of registration shall be given to men with previous registration in the industry who were not de-registered for cause; third preference of registration shall be given to men who had partial or limited registration in the industry and who were not de-registered for cause.

" '(b) Suitable personnel with clerical background or experience in the maritime industry, longshoremen and other workers covered by contracts with the PMA and ILWU shall likewise be accorded preference of registration after the application of the preceding paragraph in registering additional clerks.' "

It is then alleged in substance that under the terms of the agreement registration is accomplished by the Joint Clerks Labor Relations Committee, which is composed of two members, one selected by Pacific Maritime Association and one by Local 34; that through its representative on this committee Local 34 has arbitrarily prevented the addition of names to the registered list and thus has prevented the registration of these appellants or of any ship clerks who are not union members.

tion of the standing of employees to sue upon the various clauses of collective bargaining contracts. 371 U.S. 195, 201 n. 9, 83 S.Ct. 267, 9 L.Ed.2d 246.

It is further alleged:

"That within four years last past, on numerous occasions, and on February 9, 1962, each of the plaintiffs has duly and regularly requested and demanded that he be duly enrolled and 'registered' as a Ship Clerk by the defendant COMMITTEE under said bargaining agreement, but said COMMITTEE has and does now wrongfully refuse, neglect and fail, without just cause or excuse, to enroll said plaintiffs or any of them as 'registered' Ship Clerks, but has and does now 'register' others who joined said industry and said permanent working force subsequent to said plaintiffs. That some of those in said four-year period to whom defendant COMMITTEE has granted 'registration' in preference to the plaintiffs, in violation of Sec. 15 of said Master Agreement, had no experience in the Maritime industry at the time of their said 'registration.' That each of the plaintiffs is entitled to 'registration' (and preference therefor) under said bargaining agreement to designate each a member of the full-time working force of Ship Clerks in the Port of San Francisco under said agreement, but said defendant JOINT COMMITTEE had and does now fail, refuse and neglect to make the ministerial act of entering each of said plaintiff's names into such list of full-time Ship Clerks employed in the Port of San Francisco, working under said bargaining agreement."

The complaint further alleges the manner in which appellants have suffered injury by virtue of this discrimination, including loss of vacation pay, contingent deferred wages and welfare, pension and health benefits.

The question is whether the alleged acts of discrimination constitute a breach of the collective bargaining agreement as well as an unfair labor practice under the act. In our view, they do not.

In Smith v. Evening News the breach was of a clause providing that there should be no discrimination against any employee because of union membership. No such clause appears in the agreement before us. Section 3 of the agreement states:

"There shall be no favoritism or discrimination in the hiring or dispatching or employment of any clerk qualified and eligible under the agreement * * *."

Appellants do not claim breach of this clause, and it is clear from other provisions that the agreement not to discriminate does not refer to the initial registration process, to which appellants object, but to the subsequent hiring, dispatch and employment of clerks already registered.

Appellants' case for a breach of contract, as we understand it, is restricted to this: that under § 14 the registered list is to be maintained at such dimensions as will meet the needs of the Port of San Francisco; that it is not so maintained; that if it were, then under § 15 these appellants would be registered; that the failure of the joint committee to register these appellants is thus a breach of contract.

But the contract as alleged does not say this. There is no promise to maintain the registration at any level. The parties to the agreement may demand additions to meet the needs of the port, but there is no allegation that such a demand has been made. It may be that Local 34 owes these appellants a duty to make such a demand (they themselves having demanded registration), but if so such duty springs from the local's relationship to these appellants and not from the terms of the collective bargaining agreement.

We conclude that the complaint in its present form does not state a claim for breach of contract under § 301.

This is not to say, however, that the complaint cannot under any conceivable state of facts be amended to state a claim. We do not know, for example, that the parties to the agreement have not demanded additions to the registered list. Nor do we have any information (in

the absence of any allegation of the relevant provisions of the agreement) respecting the contractual status of vacation pay and other fringe benefits. Leave to amend should therefore be granted.

Leave to plead further is, we feel, also justified by the fact that Smith v. Evening News has provided a potential basis for relief entirely different from that with which the parties and the district court were concerned.

Reversed and remanded with instructions that judgment be set aside; that leave be granted appellants within such time as may be fixed by the district court to file an amended complaint and for such further proceedings as may thereafter be appropriate.