**Ralph CHASIS et al.**

**v.**

**PROGRESS MANUFACTURING COMPANY, Inc., International Brotherhood of Electrical Workers, AFL–CIO, Local 1841, International Brotherhood of Electrical Workers, AFL–CIO, and Local 2005, International Brotherhood of Electrical Workers, AFL–CIO.**

**Civ. A. No. 36237.**

United States District Court
E. D. Pennsylvania.

Aug. 2, 1966.

Norman Shigon, Philadelphia, Pa., for plaintiffs.

Geoffrey J. Cunniff, Bala-Cynwyd, Pa., for defendant Progress Mfg. Co. Inc.

Sherman & Dunn, Washington, D. C., for defendant, International Brotherhood of Electrical Workers.

Wilderman, Markowitz & Kirschner, Philadelphia, Pa., for defendants Local 1841 and Local 2005.

## OPINION

CLARY, Chief Judge.

Plaintiffs were employees of defendant Progress Manufacturing Company, Inc., and were represented by defendant labor organizations. The plaintiffs, with numerous other employees, engaged in a series of work stoppages, the last one occurring on October 28, 1958. All of the employees (some 900) who were engaged in this walkout were suspended. However, all but 150 of them were later rehired. Plaintiffs were among those finally dismissed from the company's employ because of their participation in the walkout.

In December, 1958 and January, 1959, unfair labor practice complaints were filed with the National Labor Relations Board by a number of discharged employees, some of whom are also plaintiffs in this action. These complainants alleged that Progress had restrained them in their exercise of Section 7 rights by discharging them for engaging in concerted activity. The Board dismissed these actions as being without merit. In 1963, plaintiffs herein commenced an action similar to the present one in the Common Pleas Court of Philadelphia County, still pending.

The present suit was filed on July 22, 1964 alleging that plaintiffs were discharged pursuant to an unlawful conspiracy between defendants; that defendant company discriminatorily discharged plaintiffs, and defendant labor unions unfairly refused to "process grievances, obtain arbitration or file charges with the National Labor Relations Board on behalf of plaintiffs * * *." (Com-

plaint, par. 21). Such actions on the part of defendants were allegedly done in violation of the collective bargaining agreement, plaintiffs' individual contracts of hire, and the National Labor Relations Act (Complaint, pars. 18, 20, 22). Moreover, the complaint alleges that defendant labor union breached its duty "of fair representation" (Complaint, pars. 13, 18). Therefore, according to plaintiffs, this suit is brought under Section 301 of the Labor Management Relations Act specifically for a violation of a contract between an employer and a labor organization (Complaint, par. 23).

The case is presently before the Court on defendants' alternative motions to dismiss or for a more definite statement. For the reasons given below, the Court has concluded that defendants' motions to dismiss will be granted.

One of the central principles of our National Labor law has been the relegation to the National Labor Relations Board of the primary responsibility for the enforcement of employer and employee duties under such law. As the Supreme Court stated in San Diego Building Trades Council v. Garmon, 359 U.S. 236, 245, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959):

> "It is not for us to decide whether the National Labor Relations Board would have, or should have, decided these questions in the same manner. When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted."

There are two major policies behind this rule. The first is a fear that a mere multiplicity of tribunals and procedures would produce incompatible or conflicting adjudications leading to confusion in the area of labor law. Garner v. Teamsters Union, 346 U.S. 485, 490–491, 74 S.Ct. 161, 98 L.Ed. 228 (1953). Secondly and more importantly, Congress has made the affirmative decision to entrust the administration of the nation's labor policy "to a centralized administrative agency, armed with it own procedures, and equipped with its specialized knowledge and cumulative experience." San Diego Building Trades Council v. Garmon, supra, 359 U.S. at 242, 79 S.Ct. at 778.

The facts pleaded in this complaint, if proven, make out at least a prima facie case that the union breached its duty of "fair representation" which it owed to plaintiffs. The concept of this duty was first developed in a line of federal court cases commencing with Steele v. Louisville N. R. R., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944).[1] These cases reasoned that since the union had been granted an exclusive bargaining position by federal law, that law had an obligation to insure that the union did not abuse its position.

Reasoning from this, the National Labor Relations Board held in Miranda Fuel Co., 140 N.L.R.B. 181, enforcement denied, 326 F.2d 172 (2 Cir. 1963) that a breach by a labor union of this duty constitutes a violation of Sections 8(b) (1) (A) and 8(b) (2) of the National Labor Relations Act. Moreover, an employer, in acquiescing in such action, also was held to violate the Act. The Second Circuit, by reversing the decision, held that this was not law in the courts under its jurisdiction. However, in the absence of any decision by the United States Supreme Court[2] or the Third Circuit Court

---

1. See generally Wellington, Union Democracy and Fair Representation; Federal Responsibility in a Federal System, 67 Yale L.J. 1327 (1958); Cox, The Duty of Fair Representation, 2 Vill.L. Rev. 151, 152 (1957). Note: Administrative Enforcement of the Right of Fair Representation—The Miranda Case, 112 U.P.L.Rev. 711, 713 (1964).

2. The Supreme Court has expressly reserved the question of whether "a violation of the duty of fair representation is an unfair labor practice under the Labor Management Relations Act." Humphrey v. Moore, 375 U.S. 335, 344, 84 S.Ct. 363, 369, 11 L.Ed.2d 370 (1964); see also Republic Steel Corp. v. Maddox, 379 U.S. 650, 652 (1965). The District of

of Appeals concerning the *Miranda* doctrine, a breach of a union's duty of fair representation is at least arguably an unfair labor practice in our jurisdiction.[3]

Therefore, unless some exception can be found to bring this case outside the rule of preemption, this Court must defer to the primary cognizance of the National Labor Relations Board. This is so whether we characterize the complaint as one involving the tort of unlawful conspiracy [4] or as sounding in contract.[5] Moreover, the logic of the preemption doctrine would seem to exclude an action brought under the *Steele* doctrine for redress of a breach of the union's duty of fair representation.[6]

■ However, plaintiffs argue that this action is not preempted by the primary jurisdiction of the Board because it is brought under Section 301 of the National Labor Relations Act. Section 301 states that:

"Suits for violation of contracts between an employer and a labor organ-

ization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. 185(a).

It is now clear that an individual union member has the right to sue under this Section for a breach of the collective bargaining agreement. Smith v. Evening News Ass'n, 371 U.S. 195, 200, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). The Court in that case read the word "between" in Section 301 as referring to *contracts* between a union and an employer, rather than *suits* between a union and an employer. Moreover, an employee may join his union together with the employer in such a suit. Humphrey v. Moore, supra, 375 U.S. at 343, 84 S.Ct. 363; International Longshoremen's and Warehousemen's Union v. Kuntz, 334 F.

---

Columbia Circuit has done likewise. Lummus Co. v. N. L. R. B., 119 U.S. App.D.C. 229, 339 F.2d 728 (1964).

3. The Board shows no signs of abandoning the Miranda doctrine. In fact, it has specifically stated: "[W]ith due deference to the circuit court's opinion, we adhere to our previous decision (Miranda) until such time as the Supreme Court of the United States rules otherwise." Local 1367, Int'l Longshoremen's Association, 148 N.L.R.B. 897, 898 at footnote 7 (1964).

4. The Garmon and Garner cases involved alleged torts arising out of picketing activities. It is true that there are narrow exceptions to the preemption doctrine where courts may deal with violence under the police power. International Union U.A.W. v. Russell, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958); Youngdahl v. Rainfair, Inc., 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151 (1957). The Supreme Court has also recently held that an action for libel is not barred. Linn v. United Plant Guard Workers, 383 U.S. 53 (1966). However, these have no application in the present case.

5. "Nor do we regard it as significant that Borden's complaint against the union sounded in contract as well as in tort.

* * * In the present case the *conduct* on which the suit is centered, whether described in terms of tort or contract, is conduct whose lawfulness could initially be judged only by the federal agency vested with exclusive primary jurisdiction to apply federal standards." (Plumbers' Union Local 100 of the United Association of Journeymen & Apprentices v. Borden, 373 U.S. 690, 698, 83 S.Ct. 1423, 1427 (1963).

6. Humphrey v. Moore, supra, involved an action brought under Section 301 for a breach of a specific provision of the collective bargaining agreement and also for a breach of the duty of fair representation. The Court held that jurisdiction was not preempted. However, the Court realized that different problems would be posed if there were no allegation of a breach of contract. Humphrey v. Moore, 375 U.S. at page 345, footnote 7, 84 S.Ct. 363. The Steele doctrine was developed on the assumption that there existed no other remedy for these wrongs. Once the Board has taken jurisdiction over this area, the policies of preemption seem fully applicable to a suit under the Steele doctrine. Alexander v. Pacific Maritime Ass'n, 314 F.2d 690, 692 (9 Cir. 1963), cert. denied 379 U.S. 882, 85 S.Ct. 150, 13 L.Ed.2d 88 (1964).

2d 165, 168 (9 Cir. 1964); Bey v. Muldoon, 217 F.Supp. 404 (E.D.Pa.1963).

The reason why plaintiffs wish to bring this action under Section 301 is obvious. In Smith v. Evening News Ass'n, supra, the Court explicitly refused to hold that such an action was barred because the subject matter arguably constituted an unfair labor practice.

"The authority of the Board to deal with an unfair labor practice which also violates a collective bargaining contract is not displaced by § 301, but it is not exclusive and does not destroy the jurisdiction of the courts in suits under § 301." Smith v. Evening News Ass'n, 371 U.S. at 197, 83 S.Ct. at 269.

The Court went on to state, however, that if there were situations in which a conflict actually arose between the Board and jurisdiction under Section 301, the Court would deal with them at that time. As a matter of fact, the National Labor Relations Board in *Smith* had urged that the Court take jurisdiction under Section 301, and the Statute of Limitations on the unfair labor practice had already run.

The decision in *Smith* was reaffirmed in Humphrey v. Moore, supra, where the Court took jurisdiction over an action alleging both a breach of the collective bargaining contract under Section 301 and a breach of the union's duties of fair representation under the *Steele* doctrine. In that case plaintiffs had alleged that their union and company entered into an agreement dovetailing seniority rights incident to a merger in violation of both the seniority provisions of the collective bargaining agreement and the union's duty of fair representation. Recently my colleague, the Honorable C. William Kraft, Jr., denied a motion to dismiss in a context quite similar to *Humphrey*, supra, Fuller v. Highway Truck Drivers & Helpers Local #107, 233 F.Supp. 115 (E.D.Pa.1964). However, in all of these cases, specific provisions of the collective bargaining contract were alleged to have been breached.

There was little question, therefore, that the real essence of the action was based on a breach of such contract.

This is not the situation here. Plaintiffs allege a number of instances of unfair and discriminatory treatment by their union and employer. It is merely claimed in the broadest terms that such discrimination violated the collective bargaining agreement. We are, therefore, faced with the question as to whether this action rightly can be considered a suit "for violation of (a) contract[s] between an employer and a labor union" under Section 301. To treat this as a suit under Section 301, and thus not subject to the primary jurisdiction of the National Labor Relations Board would be a significant extension of the rule of Smith v. Evening News Ass'n, supra. Although the law is not settled, this Court has reluctantly concluded that this action cannot be so considered and the complaint must, therefore, be dismissed.

The Supreme Court has not yet been faced with a similar situation and the cases from our Circuit Court, cited by defendants, are not directly controlling. Adams v. Budd Company, Civil Action #34799 (E.D.Pa.1964), aff'd 349 F.2d 368 (3 Cir. 1965), cited by defendants, is distinguishable. This involved a suit by employees for certain seniority benefits which had existed under a previous collective bargaining agreement, but which were abrogated when the union and company entered into a new contract. The Third Circuit Court of Appeals held that Section 301 did not give jurisdiction over the suit. The Court concluded that this provision gave jurisdiction for suits based on violation of a collective bargaining agreement, but not for an action based on the loss, through the union's negotiation of a new collective bargaining contract, of vested rights under previous contracts of hire. As Judge Kalodner pointed out:

"Here the plaintiffs do not seek redress for violation *of* a collective bargaining agreement; what they seek is redress for an alleged violation *by* a

labor contract of rights which they assert were independently, and pre-agreement, vested in them by their 'contract of hire.'" Adams v. Budd Company, supra, at 370.

The present complaint is distinguishable since it does attempt to allege a breach of the collective bargaining agreement.

Smith v. Pittsburgh Gage & Supply Co., 245 F.Supp. 864 (W.D.Pa.1965), aff'd per curiam 361 F.2d 219 (3 Cir. June 3, 1966) is more nearly apposite the instant case. There plaintiffs claimed that defendant union and employer had conspired to deprive them of seniority, union and employment rights in violation of the collective bargaining agreement. The District Court dismissed the complaint on the grounds that it stated an unfair labor practice exclusively, rather than also a breach of contract. However, the District Judge placed partial reliance in dismissing the case on the argument that there actually may not have been a contract in existence at the time of the alleged wrong. The decision of the lower Court was affirmed, per curiam, by the Third Circuit Court of Appeals, which adopted the opinion of the District Court. Although it could be argued that Smith v. Pittsburgh, supra, is distinguishable from the instant case, it does indicate a refusal on the part of our Circuit Court to allow suits broadly alleging breach of contract to needlessly circumvent the Congressional policy of the primary jurisdiction of the National Labor Relations Board. A similar decision was reached by the Ninth Circuit Court in Alexander v. Pacific Maritime Ass'n, 314 F.2d 690 (9 Cir. 1963), cert. denied 379 U.S. 882, 85 S.Ct. 150, 13 L.Ed.2d 88 (1964).[7]

 Dismissal is likewise dictated in this case. As pointed out above, Con-gress has relegated to the Board the primary responsibility for overseeing the day to day operations of labor relations. A narrow exception to this policy has been allowed in order to permit parties to judicially enforce the provisions of their collective bargaining agreements,[8] even if the alleged breach also constitutes an unfair labor practice.

Even such a restricted grant of judicial jurisdiction has brought fears of undermining the paramount policy of the primary jurisdiction of the Board.

"Such duplication of governmental supervision over industrial relationships is bound to create the same undesirable confusion, conflicts, and burdensome proceedings that the National Labor Relations Act was designed to prevent, as we have interpreted that Act in prior cases like San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959)." Dissent of Mr. Justice Black in Smith v. Evening News Ass'n, supra, 371 U.S. at 202, 83 S.Ct. at 271.

Mr. Justice Black went on to discuss the problem of labor disputes thus festering for years under a lengthy contract Statute of Limitations, rather than being concluded quickly under the six-month limit of the Board. This is essentially the situation in the present case.

Another concern with the scope of the *Smith* doctrine is whether it permits parties to write into their collective bargaining agreement prohibitions against unfair labor practices, thereby ousting the National Labor Relations Board of primary jurisdiction. Be that as it may, such a result should at least be limited to cases where the plaintiffs are able to point to specific provisions of their collective bargaining agreement, the breach

7. For analogous cases where the Pennsylvania Supreme Court has dismissed complaints, see Smith v. Pittsburgh Gage & Supply Co., 412 Pa. 171, 194 A.2d 181 (1963); Young v. United Steelworkers of America, 420 Pa. 132, 216 A.2d 500 (1966).

8. The primary purpose of Section 301 seems to be to "promote a higher degree of responsibility upon the parties to such agreements, and [will] thereby promote industrial peace." Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 453, 77 S.Ct. 912, 916, 1 L.Ed.2d 972 (1957), at footnote 4, quoting the Senate Report.

of which constitutes the real essence of their suit.

This is not so in the present case. No violations of specific provisions of the contract have even been charged.[9] Granting a motion for more definite statement would not seem to clarify significantly plaintiffs' Section 301 allegation. When asked at oral argument whether he wished to specify more pointedly the clauses of the contract on which he relied, plaintiffs' attorney declined to do so. We are, therefore, led to the conclusion that the heart of plaintiffs' alleged injury lies solely in an alleged unfair labor practice, the existence of which as to several plaintiffs has already been adjudicated by the National Labor Relations Board. To allow plaintiffs, many years later, to relitigate the same question in this Court by broadly alleging a breach of the collective bargaining agreement would seem to conflict with the basic structure of our labor law. For these reasons, the complaint must be dismissed.

---

9. See e. g., paragraph 18(a) of plaintiffs' Complaint.