[Civ. No. 31069.   Second Dist., Div. Three.   Mar. 28, 1968.]

HERBERT PRATT, Plaintiff and Appellant, v. LOCAL 683, FILM TECHNICIANS OF THE MOTION PICTURE AND TELEVISION INDUSTRIES, et al., Defendants and Respondents.

546

Earl Klein for Plaintiff and Appellant.

Youngman, Hungate & Leopold, Richard Hungate, Alvin S. Milder, Gilbert, Nissen & Irvin, Robert W. Gilbert and Hope H. Camp, Jr., for Defendants and Respondents.

FRAMPTON, J. pro tem.*—

*Preliminary Statement*

The parties to this litigation are and will be hereinafter referred to as follows:

| *Party* | *Hereinafter* |
|---|---|
| Herbert Pratt, Plaintiff and Appellant | "Plaintiff" |
| Local 683, Film Technicians of the International Alliance of Theatrical Stage Employees, Defendant and Respondent | "Union" |
| General Film Laboratories, a division of DeLuxe Laboratories, Inc., Defendant and Respondent | "General" |
| Donald Haggerty, Union Business Representative, Defendant and Respondent | "Haggerty" |
| Stacy O'Brien, General's Plant Superintendent, Defendant and Respondent | "O'Brien" |

A general outline of the dispute, of procedures taken, and of remedies sought prior to the filing of the complaint in the present action may be summarized as follows:

| *Date* | *Action Taken* |
|---|---|
| December 31, 1964 | Discharge of plaintiff by General |

I Grievance Proceedings

| | |
|---|---|
| January 5, 1965 | First step of grievance procedure pursuant to article 7 of Collective Bargaining Agreement between General and Union |
| January 12, 1965 | Second step of grievance procedure—hearing before Grievance Committee |

Circa

| | |
|---|---|
| January 21, 1965 | Grievance Committee ruling that plaintiff was "discharged for cause." |

II National Labor Relations Board (NLRB)

| | |
|---|---|
| February 5, 1965 | Plaintiff declares that he was discharged because of his union activities and that General therefore committed an unfair labor practice |

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

II  National Labor Relations Board (NLRB) (continued)

| Date | Action Taken |
|---|---|
| March 23, 1965 | NLRB Regional Director notifies counsel for plaintiff of his investigation and that he will not issue a complaint against General |
| April 7, 1965 | Plaintiff appeals Regional Director's decision to NLRB General Counsel |
| May 4, 1965 | NLRB General Counsel finds that Grievance Committee proceedings were "fair and regular and at which Pratt appeared and was permitted to enter his defense for his actions leading to the discharge" |
| May 18, 1965 | Plaintiff filed unfair labor practice charge alleging that since February 1965 Union discriminated against him |
| June 30, 1965 | NLRB Regional Director stated that as a result of investigation, further proceedings of plaintiff's charge of May 18 were not warranted |
| July 15, 1965 | NLRB General Counsel's office acknowledged appeal from Regional Director's decision of June 30 |
| August 11, 1965 | NLRB's General Counsel denied appeal based on his finding of no discrimination by Union |

III  State of California Department of Employment and Unemployment Appeals Board Proceedings

| Date | Action Taken |
|---|---|
| February 17, 1965 | State of California Department of Employment Notice of Ruling that plaintiff was found to have been discharged from General for misconduct |
| April 7, 1965 | Hearing before State of California Unemployment Insurance Referee |
| April 12, 1965 | Referee's reversal of Department of Employment ruling of February 17 |

III  State of California Department of Employ-
ment and Unemployment Appeals Board
Proceedings (continued)

| Date | Action Taken |
|---|---|
| May 24, 1965 | Decision of California Unemployment Insurance Appeals Board holding that plaintiff was discharged for reasons constituting misconduct connected with his work |
| September 11, 1965 | Complaint filed in the within action |
| November 29, 1965 | Hearings on motions by Union, Haggerty and O'Brien for summary judgment and on General's demurrer |
| December 15, 1965 | Minute order granting motions for summary judgment in favor of Union, Haggerty and O'Brien and sustaining General's demurrer without leave to amend |
| January 14, 1966 | Judgment of dismissal |
| January 28, 1966 | Plaintiff's notice of appeal from judgment |

Plaintiff's complaint sets forth three causes of action. In the first cause of action he alleges in substance, as against Union and Haggerty, that (1) plaintiff was an employee of General; (2) he was a member of the defendant Union; (3) Union was his collective bargaining representative and was obligated by virtue of its constitution and by-laws to represent plaintiff in any grievance plaintiff might have against General through the grievance procedures set forth in the collective bargaining agreements between General and Union; (4) on or about December 31, 1964, General discharged plaintiff from his employment without just cause; (5) plaintiff filed with Union a grievance complaint protesting his discharge; (6) it was the contractual duty of Union and Haggerty to represent plaintiff in the grievance procedures fairly, loyally and in good faith, and Union and Haggerty violated their contractual duty to plaintiff in that they wilfully and in bad faith failed to present plaintiff's grievance in a competent manner, and plaintiff's discharge was upheld; (7) had plaintiff been properly represented by Union and Haggerty, his discharge by General would have been found to have been without just cause; (8) plaintiff exhausted all

internal procedures required of him, and (9) plaintiff suffered damages in the sum of $50,000.

In the second cause of action against General, plaintiff alleges in substance that (1) plaintiff was employed by General as a film technician upon an oral agreement; (2) plaintiff at all times performed all of the conditions under the contract on his part to be performed; (3) General, in breach of the contract, discharged him on unsubstantial, trivial and fictitious grounds, and (4) plaintiff suffered damages in the sum of $50,000.

In the third cause of action against Union, Haggerty and O'Brien, plaintiff alleges in substance that (1) plaintiff was an employee of General; (2) Union, Haggerty and O'Brien knew of such employment; (3) knowing of such employment, Union, Haggerty and O'Brien represented to General, orally, that plaintiff was a troublemaker and interfered with the operation of General's business (4) such representations were false and were known by said defendants when made to be false, and were made with the intent to wrongfully interfere with plaintiff's employment and to induce General to breach plaintiff's contract of employment and discharge plaintiff; (5) as a result of such false representations General discharged plaintiff; (6) to plaintiff's general damages in the sum of $50,000, and (7) demand for punitive damages in the sum of $10,000.

Union and Haggerty answered the complaint and filed a motion for summary judgment as to the first and third causes of action. The grounds of the motion were (1) lack of jurisdiction in the state court, and (2) failure to allege facts constituting a breach of Union's duty of fair representation by any act of hostile discrimination against plaintiff by Union and Haggerty.

O'Brien answered the complaint and filed a motion for summary judgment as to the third cause of action. The motion for summary judgment was based upon the following grounds: (1) lack of jurisdiction in the state court of the subject matter; (2) his action in discharging plaintiff was privileged, and (3) res judicata or collateral estoppel applied.

General filed its demurrer to the second cause of action on the grounds (1) that it did not state facts sufficient to constitute a cause of action; (2) of uncertainty; (3) the complaint as to such cause of action was unintelligible, and (4) such complaint was ambiguous.

On hearing, and after submission of the foregoing motions and demurrer, the trial court ruled as follows as shown by its minutes: As to the motion of Union and Haggerty for an order to dismiss the complaint and for summary judgment the court ruled "As to the first cause of action, motion granted. Plaintiff's affidavit raises no factual issue. As to the third cause of action, motion granted. State court lacks jurisdiction since the subject matter of this cause of action arguably comes within the jurisdiction of the National Labor Relations Board. 373 U.S. 701 [10 L.Ed.2d 646, 83 S.Ct. 1429]." As to the motion of O'Brien for an order to dismiss the third cause of action and for entry of summary judgment the court ruled "Motion granted. Defendant O'Brien has established by affidavit that he was acting pursuant to and in the scope of his employment. Thus he has established an absolute defense of privilege or justification. *Marin* v. *Jacuzzi*, 224 CA 2d 549 [36 Cal.Rptr. 880], *Mallard* v. *Boring*, 182 CA 2d 390 [6 Cal. Rptr. 171]." As to the demurrer of General to the second cause of action the court ruled "Demurrer sustained without leave to amend on the ground that no cause of action is stated. 1. An employment agreement having no specific term of duration may be terminated at will of either party for any reason. Labor Code 2922, 224 CA 2d 549. 2. The issue of wrongful discharge is barred under the principles of collateral estoppel. 3. Witkin, Proc. 1927. Unemployment Ins. Code sec. 410, 55 C 2d 728." Judgment of dismissal in accordance with the foregoing rulings was entered. The appeal is from this judgment.

The motions for summary judgment and the demurrer were submitted for decision on November 29, 1965. The minute order granting the motions and sustaining the demurrer was made on December 15, 1965. The judgment of dismissal was signed and filed on January 14, 1966. In plaintiff's opening brief he states that on or about December 3, 1965, he lodged with the court a proposed amended complaint with a "later letter request" that the court vacate its order of submission to allow the filing of the amended complaint. Union and Haggerty had filed their answer to plaintiff's complaint on November 1, 1965, and O'Brien had filed his answer thereto on November 3, 1965. It does not appear that a proper notice of motion to file an amended complaint was ever filed or served on the defendants, and the clerk's transcript does not disclose what the court's ruling was, if any, with respect to the "letter request."

On appeal this court granted plaintiff's application to augment the record by including therein the proposed amended

complaint. The proposed amended complaint shows that it was filed in the clerk's office below on December 15, 1966. The proposed amended complaint sets forth two causes of action. The first cause of action therein, against Union, General and Haggerty, combines the first and second causes of action in the original complaint. In addition, the proposed amended complaint alleges in substance that (1) according to custom and usage and by interpretation of the collective bargaining agreement plaintiff's employment with General was to last so long as his work was satisfactory and so long as work was available, and (2) the second step grievance procedure did not settle the dispute within 10 days, and plaintiff requested the third step grievance procedure provided in the collective bargaining agreement and such request was denied. The prayer asked the court to order invocation of the third step grievance procedure. The second cause of action in the proposed amended complaint was substantially a reiteration of plaintiff's third cause of action in the original complaint against Union, Haggerty and O'Brien.

The declarations in support of the motion for summary judgment of Union and Haggerty on the first and third causes of action may be summarized as follows: Haggerty declared that upon learning of Pratt's discharge by General he called a meeting between the representative of Union and the representative of General in order to settle the dispute in accordance with step one of the grievance procedure outlined in article 7 of the collective bargaining agreement between Union and General; such meeting was held on January 5, 1965; present at this meeting were Pratt and Haggerty representing Pratt and Union, and shop stewards Rooney and Russell; General was represented by Landers, its plant manager, and O'Brien, its plant superintendent; the reasons given for the discharge were that Pratt had pushed O'Brien twice, had defied plant orders by refusing to keep his printer route card, had torn such card up and thrown it on O'Brien's desk, had yelled loudly and had used abusive and profane language in addressing O'Brien, and in addressing one Hageman, the supervisor of the printing department of General; on two occasions on the morning just prior to his discharge, Pratt had challenged O'Brien to fire him. Haggerty declared further that based upon what Pratt had told him of the encounter with his supervisor, he had not pushed O'Brien but had merely put two fingers and his hand on O'Brien's lapel, that Haggerty requested that Pratt be put back to work; this request was refused by General.

Haggerty declared further that he then prepared to proceed to a hearing before the grievance committee as outlined for step two in article 7 of the collective bargaining contract. In this connection, before going to such hearing, he prepared himself by going to the film laboratory of General where he interviewed all persons available who witnessed the encounter between Pratt and O'Brien which resulted in Pratt's discharge; he was unable to find any witness who could provide testimony or other evidence that would contradict any of the reasons given at the step one hearing for the discharge; he solicited Pratt to produce witnesses in his behalf to contradict or mitigate the charges and the only witnesses Pratt suggested to Haggerty were persons who Pratt stated would testify generally to his good character. Haggerty declared that step two of the grievance procedure was carried out on January 12, 1965; the members of the grievance committee were Mr. Charles Boren, Executive Vice-President of the Association of Motion Pictures and Television Producers, Inc., representing the producer labor committee and Mr. Zeal Fairbanks, International Representative of the IATSE; that as Union's business representative he represented Pratt who testified in his own behalf; Rooney, one of the shop stewards, was also present on behalf of Pratt and Union; General was represented by Landers, its plant manager; witnesses called on behalf of General were O'Brien, Thomas C. Haggerty, an employee of General and a member of Union (not shown to be related to defendant Haggerty), and Ted Hageman, General's superintendent of printing; it was the unanimous decision of the grievance committee, after hearing, that Pratt had been discharged for cause. A copy of the decision of the committee showing the parties present, the witnesses before the committee, the issues, contentions and the decision of the committee was attached and made a part of Haggerty's declaration. Haggerty declared further that by letter of February 3, 1965 (a copy of which was attached to and made a part of his declaration), he pointed out to Pratt that pursuant to the procedures provided by article 7 of the collective bargaining contract the decision of the grievance committee was final and binding.

Haggerty declared further that after he had advised Pratt that his grievance over his discharge could not be carried further by Union, that article 74, section (c) of the collective bargaining agreement provided that an employee discharged for cause was not entitled to severance pay, Pratt, nevertheless, made a claim for severance pay and he presented such

claim on behalf of Pratt to General and it was denied by General under article 74 of the contract on April 19, 1965; on April 20, 1965, he informed Pratt of General's denial of such claim. He declared further that on several occasions prior to Pratt's discharge he had interceded on his behalf in connection with difficulties he was having relating to his employment at General; in March 1963, after Pratt had received a verbal warning on February 20, 1963, and a written warning on March 5, 1963, for his not remaining at his work station and for his not punching out on his time card when he was away from his work station, and after a representative of General informed Haggerty that General intended to fire Pratt, Haggerty interceded on Pratt's behalf and he was not fired. A copy of the written warning by General to Pratt under date of March 5, 1963, was attached to and made a part of Haggerty's declaration. Haggerty declared further that in November 1964, after Pratt had received a written warning from General that if he continued to refuse to fill out his printing record card as to the jobs he had performed, he would be subject to immediate dismissal, Haggerty again interceded on Pratt's behalf and he was not fired. A copy of this written warning was attached to and made a part of Haggerty's declaration. Haggerty declared that Pratt was employed by General as a printer; that it is the custom and practice of those engaged in the printing operation to fill out the printing record card and that such procedure is required of the printer operator. Haggerty declared further that following his discharge, Pratt filed an application for unemployment compensation benefits; that the California Unemployment Insurance Appeals Board, in benefit decision case number 65-1675, held that Pratt was disqualified for benefits for a five week period because his termination with General was for reasons constituting misconduct connected with his work. A copy of the decision of the appeals board was attached to and made a part of Haggerty's declaration.

With respect to the allegations of the complaint wherein Pratt charged that Haggerty and Union represented to General that he was a troublemaker and that he interfered with the operation of General's business, Haggerty declared that no such representations were ever made; that following Pratt's discharge and after the grievance procedures had been exhausted, Union made every effort to obtain employment for Pratt; Haggerty personally made it a point to insist to a number of employers that no lower classified man be hired

unless Pratt was hired first; that Union referred Pratt to the following employers on the dates indicated:

| Date | Employer |
| --- | --- |
| 2/ 8/65 | Pathe Laboratories, Inc. |
| 3/ 5/65 | Panacolor |
| 3/ 8/65 | Panacolor |
| 3/ 9/65 | Color Reproduction Co. |
| 3/10/65 | Deluxe Laboratory Films |
| 3/10/65 | Hollywood Film Enterprise |
| 3/17/65 | Panacolor |
| 3/25/65 | Universal International |
| 4/ 2/65 | Technicolor |
| 5/ 4/65 | Panacolor |
| 5/ 6/65 | Pathe Laboratories, Inc. |
| 5/26/65 | Pathe Laboratories, Inc. |
| 6/ 9/65 | Hollywood Film Service |
| 6/14/65 | Hollywood Film Enterprise |
| 6/21/65 | Color Reproduction Co. |
| 7/ 9/65 | M.G.M. |
| 8/ 4/65 | Universal International (where he was finally hired and is now working) |

Haggerty declared further that many of the employers to whom Pratt was referred by Union following his discharge by General refused to hire him because of his prior employment record and because of their past experience with him as an employee. Attached to Haggerty's declaration and made a part thereof were copies of letters from Pathe Laboratories, Inc., Film Service Laboratories, Inc., and Technicolor Corporation, Inc., respectively, addressed to Haggerty and Union indicating their unwillingness to hire Pratt because of their unsatisfactory experience with him as an employee. Haggerty declared that in the case of Pathe Laboratories, Inc., to which Pratt was referred several times following his discharge by General, the superintendent in charge of hiring was even. reluctant to interview him because of his past record and that Haggerty interceded specially on Pratt's behalf and set up an interview; the interview was held and as a result of it Charles R. Evans, the plant superintendent, wrote a letter to Haggerty and Union under date of May 27, 1965, mentioning the interview had on May 26, 1965, with Pratt, and stating that in their past experience with Pratt they had found him to be an undesirable employee, and that during the interview Pratt's attitude was overbearing and arrogant. A copy of this

letter was attached to and made a part of Haggerty's declaration.

Haggerty declared further that while Union was bending every effort to obtain employment for Pratt, he filed an unfair labor practice charge with the National Labor Relations Board on May 17, 1965, alleging that Union and its officers, including Haggerty, were not notifying him of available jobs; this charge was dismissed after investigation by the Regional Director of the Twenty-First Region of the National Labor Relations Board in Los Angeles; Pratt's appeal to the National Labor Relations Board in Washington from such dismissal was denied on August 11, 1965. Copies of the proceedings before the National Labor Relations Board were attached to and made a part of Haggerty's declaration. One of the reasons given for the denial of Pratt's appeal appears from exhibit L attached to Haggerty's declaration, written by the General Counsel of the National Labor Relations Board in Washington, as follows: "The appeal is denied. Under all the circumstances, including Pratt's numerous referrals since registering on the Union's out-of-work list, the fact that several industry employers, including those named in the charge, notified the Union that Pratt was unacceptable for future employment because of his earlier poor employment record with those employers (an established practice in the industry), and the fact that the Union notified other employers in the area (who had not previously employed Pratt) that no lower classified men would be referred unless Pratt was hired first, insufficient basis existed for a finding that the Union had failed to discharge its statutory obligations with respect to employment referrals for Pratt."

Haggerty declared further that he knew that General annually processes and ships film valued at $50,000 to customers located outside California, and that General processes and sells film valued in excess of $50,000 to firms in California who in turn annually sell services and products valued at $50,000 to customers outside California.

The declarations in support of the motion of O'Brien for summary judgment on the third cause of action may be summarized as follows: O'Brien declared that General is a division of DeLuxe Laboratories, a corporation authorized to do business in, and doing business in the State of California; continuously since 1956, and at all times mentioned in plaintiff's third cause of action, O'Brien had been employed by General as plant superintendent; his duties included general

supervision of production, personnel and all other operations of General at the plant where Pratt was employed; he was authorized by General to hire and discharge employees; on December 31, 1964, acting on behalf of General, he gave notice of discharge to Pratt; such discharge was prompted solely by Pratt's insubordination and willful disregard of the company's rules of conduct on the job, committed in O'Brien's presence; the issue of the propriety of Pratt's discharge was regularly presented and processed by Union through the grievance procedures provided under the collective bargaining contract between Union, of which Pratt was a member, and General; the propriety of such discharge was carried through and ended with the second step of the grievance procedure. A copy of the decision of the grievance committee showing that Pratt was "discharged for cause" by General on December 31, 1964, was attached to and made a part of O'Brien's declaration. O'Brien declared further that the propriety of Pratt's discharge was the subject of inquiry before the California Unemployment Insurance Appeals Board. A copy of the decision of such board was attached to and made a part of O'Brien's declaration. This decision discloses that the board found that Pratt had been discharged by General for reasons constituting misconduct connected with his work within the meaning of sections 1256 and 1030 of the Unemployment Insurance Code. O'Brien declared further that the propriety of Pratt's discharge from his employment with General had been further subjected to scrutiny by the National Labor Relations Board. Copies of the proceedings in this connection were attached to and made a part of O'Brien's declaration. These documents disclosed that on February 5, 1965, Pratt filed a charge with the National Labor Relations Board against General wherein he claimed that he had been wrongfully discharged by General on December 31, 1964. The charge before the National Labor Relations Board was identical with the incident heard and disposed of by the grievance committee and by the California Unemployment Insurance Appeals Board. The record discloses that after careful investigation the Regional Director of the National Labor Relations Board, on March 23, 1965, refused to issue a complaint in the matter. The record further discloses that on April 7, 1965, Pratt appealed from the refusal of March 23, 1965, and on May 4, 1965, such appeal was denied by the General Counsel of the National Labor Relations Board. O'Brien declared further that General was engaged in interstate commerce and had been treated as engaging in interstate commerce by the

National Labor Relations Board twice in 1965 in cases numbered 21-CA-6454 and 21-CB-2561.

Russ Landers declared that at all times mentioned in the complaint he was employed by General as Industrial Relations Director; on December 31, 1964, O'Brien gave notice of discharge to Pratt; on February 5, 1965, General was notified that unfair labor practices within the meaning of section 8(a)(1) and (3) of the National Labor Relations Act had been charged against General by Pratt. Documentation of these charges and the disposition thereof by the National Labor Relations Board (which were attached to the O'Brien declaration and which are hereinabove referred to) were incorporated in and made a part of Landers' declaration. Landers declared further that on May 17, 1965, General was notified that another unfair labor practice within the provisions of section 8(b)(1)(A) and 8(b)(2) of the National Labor Relations Act had been charged against Union by Pratt. Documentation of these proceedings before the National Labor Relations Board and their final disposition by denial of the appeal from the order of the Regional Director refusing to issue a complaint against Union is attached to and made a part of the declaration of Landers. This charge is one of the same charges set forth in the declaration of Haggerty and relates to the claim that Union discriminated against Pratt in not giving him job opportunities after his discharge by General. Landers declared further that General was engaged in interstate commerce and that Pratt had alleged that General was so engaged in both charges brought by him before the National Labor Relations Board.

In opposition to the motion of Union and Haggerty for summary judgment, Pratt declared that at the time of his discharge he had been in the employ of General for 10 years; his work was satisfactory and on frequent occasions he made suggestions which helped reduce costs and improve operations; during the period of time that Haggerty had been business representative for Union there had developed animosity and ill-feeling between Haggerty and declarant and by Haggerty against declarant; after the events of December 31, 1964, he talked to Haggerty for 10 to 15 minutes about what had occurred; after that he was not contacted by Haggerty before the first step grievance or the second step grievance; Haggerty arrived late on January 11, 1965, the date first scheduled for the second step grievance hearing, and because the arbitrators had other appointments, the hearing was post-

poned to the following day; when Haggerty arrived on January 11, 1965, declarant started to hand him a list of fellow employees he wanted called to testify on his behalf, whereupon Haggerty shrugged his shoulders and declined to accept such list; at the hearing on January 12, 1965, Haggerty did not present any evidence on declarant's behalf, misstated declarant's position before the board, and did not question any of General's witnesses, although there were discrepancies in their statements; declarant wanted witnesses called to testify that the employees of General were seldom criticized for not filling out a printer card report; that such reports were seldom filled out and no other employee was ever reprimanded for his failure to fill out such a report. Pratt declared further that the original charges of General against him included a charge of drunkenness which he considered to be the most serious of the charges against him; this charge was not brought up at the grievance hearing; the fact that such charge was dropped should have been emphasized since it was a most significant change of position by General and cast doubt on the other charges; that declarant was a hard worker and of good character, having worked 10 years for General, and on September 11, 1964, he had received a 10-year service pin from General acknowledging his loyalty and cooperation through good times and bad times; that the testimony of witnesses to declarant's good character, had they been called before the grievance committee, would have overshadowed the charges made before such committee. Pratt declared further that he appeared with his attorney before the grievance committee and that his attorney was asked to leave; this left him solely in the hands of Haggerty who did nothing to help his case because of personal animosity toward him.

Pratt's declaration in opposition to the motion for summary judgment made on behalf of O'Brien is in substance as follows: He was technically not a party to the grievance proceedings; the parties were General and the local of Union; he appeared at the first step grievance hearing with his attorney who left after Landers stated that General, under the collective bargaining agreement, only recognized the local of Union as Pratt's representative and General would not permit Pratt's attorney to appear on his behalf or be present at the hearing; at the second step grievance hearing he appeared with his attorney, who was later excluded from the hearing; no witnesses were called on his behalf other than declarant, although he had requested Haggerty to call certain

witnesses; witnesses were present on behalf of General; Haggerty, who undertook to represent him, did not consult with him prior to the hearing, and did not discuss with him the presentation of his case; Haggerty did not question or cross-examine witnesses called by General, nor did he present evidence on declarant's behalf; he did not have fair or effective representation at the hearing and was denied the right to representation by an attorney of his choice; the hearing officers or arbitrators were affiliated with the parties in that Mr. Boren was an official of the Motion Picture Producers Association, which represents General, and Mr. Fairbanks was an officer of the International Union, which is the bargaining agent for the local union; he asked for a third step grievance hearing before an impartial arbitrator, and such request was denied; he incorporates by reference the allegations contained in his first cause of action. Pratt declared further that in the matter of his unemployment insurance, less than $300 was involved; he appeared at the hearing by himself because the amount involved did not justify retaining an attorney; he did not challenge the appeals board decision because the cost involved would be three or four times the amount involved; the proceeding concerned the interpretation of a provision of the unemployment compensation laws; the charges before the National Labor Relations Board concerned whether an unfair labor practice was involved in his discharge and did not concern matters involved in his second or third causes of action; the National Labor Relations Board ruling merely decided that no unfair labor practice was involved in his firing or discharge; "O'Brien acted as he did toward me and discharged me on December 31, 1964, because of his personal ill-feeling toward me."

### The Case as to General

Plaintiff's second cause of action alleges an oral contract of employment with General without setting forth any term for such employment. An employment, having no specified term, may be terminated at the will of either party on notice to the other. (Lab. Code, § 2922; *Marin* v. *Jacuzzi*, 224 Cal.App.2d 549, 553 [36 Cal.Rptr. 880]; *Mallard* v. *Boring*, 182 Cal.App.2d 309, 394 [6 Cal.Rptr. 171].) The complaint, not having alleged any term of employment, did not state a cause of action against General for breach of contract, and the demurrer thereto was properly sustained. (*Adkins* v. *Model Laundry Co.*, 92 Cal.App. 575, 581 [268 P. 939].) On

the demurrer and on the motions the trial court's attention was directed to the proceedings had before the California Unemployment Insurance Appeals Board and the National Labor Relations Board. The court could have, and did, take judicial notice of these proceedings. (*Flores* v. *Arroyo,* 56 Cal.2d 492, 496 [15 Cal.Rptr. 87, 364 P.2d 263] ; 2 Chadbourn, Grossman, Van Alstyne, Cal. Pleading (1961) § 1285, p. 468.) The proceedings before the state agency show that plaintiff was the claimant and General was the employer and that the dispute between plaintiff and General before the state agency was whether plaintiff, on December 31, 1964, was discharged for misconduct connected with his employment, the identical issue raised in plaintiff's complaint. After a hearing in which the plaintiff was given a full opportunity to present his case it was determined that he had been discharged for reasons constituting misconduct connected with his work. This decision became final.

General urges that the decision of the California Unemployment Insurance Appeals Board, hereinafter referred to as CUIAB, is res judicata on the question as to whether plaintiff's discharge constituted a breach of the contract of employment. The CUIAB is an agency created by the Legislature. Within the framework of the law creating it and under which it functions, it exercises what has been described as "discretionary administrative functions." (*Standard Oil Co.* v. *State Board of Equalization,* 6 Cal.2d 557, 560 [59 P.2d 119].) It does not exercise judicial powers in the sense that its decision on the question whether an employee was or was not discharged for misconduct connected with his most recent work (Unemp. Ins. Code, § 1256), as bearing upon the employee's right to receive unemployment insurance benefits, should be determinative of the employee's right to sue his employer in a court of law for breach of the contract of employment. It has been held that the decision of an administrative agency when final is res judicata as to a subsequent hearing on the same subject before the same agency unless the statute creating the agency authorizes it to reconsider the case. (*Hollywood Circle, Inc.* v. *Department of Alcoholic Beverage Control,* 55 Cal.2d 728, 732 [13 Cal.Rptr. 104, 361 P.2d 712].) Here, however, the CUIAB had no jurisdiction over the contract dispute between plaintiff and General, and it had no judicial power to determine plaintiff's contract rights of employment with his employer. Our Supreme Court has said, in quoting with approval from *Gilde* v. *Superior*

*Court,* 147 Cal. 21 [81 P. 225], that " 'Vested rights of property and contract rights are placed by the constitution under the protection of the courts, where alone the questions of law and fact upon which they depend can be finally decided.' " (*Laisne* v. *California State Board of Optometry,* 19 Cal.2d 831, 836 [123 P.2d 457].) ■ We are of the opinion that the decision of the CUIAB that plaintiff was ineligible for unemployment insurance benefits because of its finding that he was discharged for misconduct connected with his most recent work is not res judicata upon the plaintiff's claim that he was wrongfully discharged by General.

## The Case as to O'Brien

■ The declarations of O'Brien and Landers show that O'Brien, in discharging plaintiff, was acting in the course and scope of his employment with, and as the agent of General. The act of O'Brien, therefore, in discharging plaintiff was the act of General. Such declarations show further that O'Brien, as plant superintendent of General, had the authority to fire plaintiff. O'Brien, as plant superintendent, occupied a confidential relationship to General. One who is in a confidential relationship with a party to a contract is privileged to induce the breach of that contract. Thus, a servant may induce his master to breach a contract with a third person. The inducement must not only be wrongful but it must also be unprivileged. (*Mallard* v. *Boring,* 182 Cal. App.2d 390, 393 [6 Cal.Rptr. 171]; *Lawless* v. *Brotherhood of Painters,* 143 Cal.App.2d 474, 478 [300 P.2d 159]; *Marin* v. *Jacuzzi,* 224 Cal.App.2d 549, 553 [36 Cal.Rptr. 880].)

Furthermore, plaintiff's third cause of action alleges a wrongful interference with his contract of employment by the defendants Union, Haggerty and O'Brien in that such defendants orally represented to General that he "was a troublemaker and interfered with the operation of the business"; that such representations were false and were known to be false, and that such representations caused General to breach the contract of employment. The declarations of O'Brien and Landers show that the plaintiff was discharged for insubordination and misconduct connected with his employment; that the propriety of his discharge was resolved in favor of General and against Pratt in the grievance proceedings provided in the collective bargaining contract between Union, Pratt's representative, and General; that the California Unemployment Appeals Board had found

that plaintiff.'s discharge was for misconduct connected with his employment, and that the National Labor Relations Board, after full investigation had found such discharge proper and had refused to charge General with an unfair labor practice. Plaintiff's declarations in opposition to the motions for summary judgment of Union, Haggerty and O'Brien, contain nothing by way of a statement of fact bearing upon any representation, false or otherwise, claimed to have been made by such defendants. Plaintiff's declarations relate solely to the claim that Haggerty, as his representative, failed to properly represent him in the grievance procedures. In these circumstances, plaintiff's declarations presented no triable issue of fact as to his third cause of action. The declarations show without conflict and as a matter of law that the plaintiff has no cause of action against O'Brien for wrongful interference with his contract of employment with General, and summary judgment in favor of O'Brien on the third cause of action was properly granted.

### The Case as to Union and Haggerty

What has been said with respect to the sufficiency of the declarations in support of the motion for summary judgment on the third cause of action as to O'Brien is applicable to the motion for summary judgment on said cause as to Union and Haggerty. The declaration of plaintiff, as it relates to the third cause of action, raises no triable issue of fact, and in such case the motion for summary judgment was properly granted.

The first cause of action asserts that Union and Haggerty breached their contract with plaintiff to fairly represent him in the grievance proceedings provided under the collective bargaining agreement between Union and General. Plaintiff's declaration as it relates to this cause of action raises triable issues of fact. If, then, the state court has jurisdiction of such dispute, the motion for summary judgment as to this cause of action was improperly granted.

The declarations show that General was engaged in interstate commerce. They show also that the National Labor Relations Board had recognized plaintiff's dispute with his employer in the instant case as one within its jurisdiction. They show also that Union and Haggerty, under the collective bargaining agreement had the duty to fairly represent plaintiff in any grievance he had with his employer arising out of his employment. At the time the trial court entered judgment on the demurrer and the motions (January 14, 1966), it had

been held that where the employee claims that his employer discriminatorily discharged him and his union unfairly refused to process grievances or file charges with the National Labor Relations Board on his behalf in violation of the collective bargaining agreement, and it was claimed therefore that the union breached its duty of fair representation, that such dispute is arguably subject to sections 7 or 8 of the Act[1] and was under the exclusive competence of the National Labor Relations Board. (*Chasis* v. *Progress Mfg. Co.* (E.D.Pa. 1966) 256 F.Supp. 747.) An opposite view was expressed by a divided court in *National Labor Relations Board* v. *Miranda Fuel Co.* (2d Cir. 1963) 326 F.2d 172.[2] Where plaintiff sought relief by way of damages and injunction on the ground that a labor union arbitrarily excluded him from membership and discriminatorily barred him from employment which he would have otherwise obtained, it was held that the crux of plaintiff's complaint pertained to employment relations, rather than to union membership, and the federal act preempted action at the state level. (*Directors Guild of America, Inc.* v. *Superior Court,* 64 Cal.2d 42, 54-55 [48 Cal.Rptr. 710, 409 P.2d 934].)

After the rulings were handed down in *Chasis, N.L.R.B.* v. *Miranda, etc.,* and *Directors Guild etc.* v. *Superior Court,* the Supreme Court of the United States held that a state court has jurisdiction over a cause of action wherein a discharged employee alleges that his union has arbitrarily, capriciously and without just cause failed or refused to take his grievance to arbitration under a collective bargaining contract, such jurisdiction not being preempted by the National Labor Rela-

---

[1] USCA, Title 29, §§ 157, 158.

[2] The District Court in *Chasis,* in declining to follow the rule announced in *Miranda,* stated (pp. 749-750), ''However, in the absence of any decision by the United States Supreme Court or the Third Circuit Court of Appeals concerning the *Miranda* doctrine, a breach of a union's duty of fair representation is at least arguably an unfair labor practice in our jurisdiction.'' The District Court pointed out further (pp. 749-750, fn. 2) that the Supreme Court has expressly reserved the question of whether '' 'a violation of the duty of fair representation is an unfair labor practice under the Labor Management Relations Act.' (*Humphrey* v. *Moore,* 375 U.S. 335, 344, 84 S.Ct. 363, 369, 11 L.Ed.2d 370 (1964); see also *Republic Steel Corp.* v. *Maddox,* 379 U.S. 650, 652 (1965).) The District of Columbia Circuit has done likewise. (*Lummus Co.* v. *N.L.R.B.,* 119 U.S. App. D. C. 229, 339 F.2d 728 (1964).)'' It was pointed out further in *Chasis* that the board shows no signs of abandoning the *Miranda* Doctrine. ''In fact, it has specifically stated '[W]ith due deference to the circuit court's opinion, we adhere to our previous decision (Miranda) until such time as the Supreme Court of the United States rules otherwise.' (Local 1367, Int'l Longshoremen's Association, 148 N.L.R.B. 897, 898, at footnote 7 (1964).)'' (P.750, fn. 3.)

tions Board's jurisdiction over unfair labor practices. (*Vaca* v. *Sipes* (Feb. 27, 1967) 386 U.S. 171 [17 L.Ed.2d 842, 87 S.Ct. 903].) ▮▮ The Supreme Court in *Vaca* held also that Congress did not intend to shield employers from the natural consequences of their breaches of collective bargaining agreements by wrongful union conduct in the enforcement of such agreements, and that a wrongfully discharged employee may bring an action for breach of a collective bargaining contract against his employer in the face of a defense based upon the failure to exhuast contractual remedies, provided the employee can prove that the union, as bargaining agent, breached its duty of fair representation in its handling of the employee's grievance. ▮ Plaintiff's first cause of action is framed in language indicative of a breach of duty grounded in federal statutes, and federal law therefore governs his cause of action. (*Vaca* v. *Sipes, supra,* 17 L.Ed.2d 850.)

▮ Since the ruling in *Vaca,* it would appear that plaintiff could state a cause of action against General, Union and Haggerty, cognizable in the state court, for the alleged failure of Union to fairly represent him in the grievance procedures provided by the collective bargaining agreement between General and Union. It appears also that plaintiff made an abortive attempt to file such a cause of action by his proposed amended complaint. In the circumstances here shown we believe the plaintiff should be given the opportunity to file an amended complaint, if he is so advised, against General, Union and Haggerty, setting forth a cause of action based upon Union's alleged failure to fairly represent him in the grievance procedures.

The judgment of dismissal upon the sustaining of General's demurrer without leave to amend to the second cause of action is reversed, with directions to the trial court to permit the filing of an amended complaint in accordance with the views herein expressed. The summary judgment as to Union and Haggerty on the first cause of action is reversed. The summary judgment as to Union, Haggerty, and O'Brien on the third cause of action is affirmed.

Ford, P. J., and Cobey, J., concurred.